[Civ. No. 23040. Third Dist. Feb. 25, 1985.]

BEAR CREEK PLANNING COMMITTEE, Plaintiff and Respondent, v.
TITLE INSURANCE AND TRUST COMPANY,
Defendant and Appellant;
ERNEST RILEY et al., Interveners and Appellants.

1228

**COUNSEL**

McDonough, Holland & Allen and Michael T. Fogarty for Defendant and Appellant.

Paulsen & Vodonick and E. John Vodonick for Interveners and Appellants.

Stark, Stewart, Wells & Robinson, Ned Robinson and R. Gordon Baker, Jr., for Plaintiff and Respondent.

## OPINION

**CARR, J.**—In yet another chapter of this fertile field of litigation,[1] a new party emerges as the appellant on the vital issue of who is going to pay what and to whom. Defendant Title Insurance and Trust Company, our new party, appeals from a judgment ordering it to indemnify plaintiff Bear Creek Planning Committee for damages assessed against plaintiff in the prior slander of title action by interveners Ernest and Jewel Riley. Defendant contends: (1) the court erred in not awarding indemnity on a comparative fault basis; (2) in any event it cannot be liable for indemnification as it was not a joint tortfeasor in the underlying slander of title action, in which plaintiff was an active participant in the wrong; (3) the court erred in awarding plaintiff attorney fees incurred in defending the slander of title action and in prosecuting the present indemnity action; and (4) the court erred in awarding plaintiff prejudgment interest for the period preceding entry of the slander of title judgment. Interveners cross-appeal, contending they are entitled to an award of attorney fees. We shall affirm in part and reverse in part.

### FACTS

Plaintiff Bear Creek Planning Committee is an association of homeowners in the Alpine Meadows Estates subdivision near Lake Tahoe. Plaintiff's function is to oversee and enforce covenants, conditions, and restrictions (CC & Rs) attached to each lot to ensure proper architectural design of the improvements constructed thereon. In 1961, plaintiff entered into an agreement with the original developer whereby the developer was to burden each lot with a condition that the purchaser must submit building plans and specifications to plaintiff for architectural approval. The agreement charged plaintiff with the duty of reviewing plans and enforcing the architectural standards. The CC & Rs for lots 72 through 116 of subdivision unit 3 include the condition that no structure shall be erected upon any lot until the plans and specifications therefor have been submitted to plaintiff for approval.

---

[1]*Riley* v. *Bear Creek Planning Committee* (1976) 17 Cal.3d 500 [131 Cal.Rptr. 381, 551 P.2d 1213], sojourned in this court on its way to the Supreme Court.

The developers employed defendant Title Insurance and Trust Company and its predecessor in interest, Placer County Title Company, as title insurer and escrow agent for the units in Alpine Meadows Estates. Defendant concedes it was contractually bound to record the CC & Rs for each unit in the subdivision on behalf of the developers. Defendants so recorded the CC & Rs for units 2 and 4 of the subdivision.

In February 1964 interveners Ernest and Jewel Riley purchased lot 101 in subdivision unit 3. Prior to the closing of the sale, defendant sent the Rileys a copy of the CC & Rs, as well as the public report on the unit. The public report stated no construction was to take place until the plans and specifications therefor had been approved by plaintiff. Defendant sent the Rileys a copy of the buyer's instructions, which noted that title to the property was subject to the "covenants, conditions, restrictions, rights of way, easements and reservations of record." The phrase "of record" was inserted in place of the printed phrase "shown on your title report." This change was effected because the preliminary title report did not show any CC & Rs and defendant wished to be "protected" in case they were subsequently recorded. The undisputed fact is that at the time of conveyance to the Rileys in February 1964 the CC & Rs for unit 3 had not been recorded, and the Rileys' deed contained no restrictions on the use of the property. An amended declaration of covenants, conditions and restrictions for lots 72 through 116 of unit 3 was not recorded until November 25, 1964. However, in 1964 or 1965 the Rileys did submit construction plans to plaintiff in accordance with the CC & Rs and plaintiff approved such plans.

In 1971 the Rileys engaged in further construction of a covered walkway, a snow tunnel between their house and parking pad. They neither sought nor received approval of plaintiff for this construction. Plaintiff's representative asked the Rileys' neighbors to contact them and request that they abide by the CC & Rs. On November 3, 1971, the Rileys submitted plans for the covered walkway to plaintiff, together with a letter in which they stated there were no restrictions in either their deed or title report.

On December 13, 1971, plaintiff disapproved the plans and directed its chairman to record a lien against the Rileys' property. On December 22, 1971, the chairman, by letter, informed the Rileys of plaintiff's decision and further stated that in the opinion of plaintiff's legal counsel, the Rileys' assertion that the CC & Rs were not applicable to their property was erroneous. Plaintiff considered filing a suit against the Rileys, but in lieu thereof determined to record a notice of violation, as the coffers of the Bear Creek Planning Committee were at low ebb. On January 12, 1972, plaintiff record-

ed a "Notice of Violation of Covenants, Conditions and Restrictions" against the Rileys' property.

The Rileys' attorney in turn informed plaintiff, through its chairman, that the CC & Rs were not recorded until after the conveyance of lot 101 and that no restrictions were contained in the conveyance itself; that the Rileys were in the process of selling the lot and intended to bring an action to quiet title and for slander of title unless plaintiff forthwith recorded a rescission of the notice of violation. Plaintiff's chairman understood the letter to mean plaintiff could have avoided a lawsuit at that point if it rescinded the notice of violation.

Plaintiff's chairman then confirmed the CC & Rs were not recorded when lot 101 was conveyed to the Rileys. The chairman, an attorney, had research conducted and concluded the Rileys' actual notice of and compliance with the CC & Rs was sufficient to bind them to the CC & Rs.

On April 20, 1972, the Rileys filed a complaint against plaintiff to quiet title and for slander of title. The quiet title action was bifurcated from the slander of title action and on March 29, 1973, the court entered judgment quieting title in the Rileys. Thereafter plaintiff rescinded the notice of violation.

The Supreme Court, in adopting the well-reasoned opinion of the presiding justice of our court, affirmed the judgment of the trial court, holding that in the absence of language in the Rileys' deed restricting the use of their property, the CC & Rs were unenforceable, and the recording of the CC & Rs after conveyance was ineffective to restrict the use of the property. (*Riley* v. *Bear Creek Planning Committee, supra,* 17 Cal.3d 500, 507-512.)

The slander of title action then proceeded to trial. On September 27, 1976, plaintiff tendered the defense of this action to defendant, which defendant refused. Plaintiff moved to file a cross-complaint for indemnity against defendant. The motion was denied. On December 29, 1976, plaintiff then filed the complaint in the present action against defendant for indemnity and declaratory relief.[2]

After trial on the slander of title action, a jury found against plaintiff and assessed damages at $50,000. Plaintiff's chairman and secretary, sued in

---

[2]Along with defendant Title Insurance and Trust Company plaintiff joined several individuals and corporations involved in the Alpine Meadows development. Default was taken against all defendants except Title Insurance and Trust Company, apparently the only financially viable defendant in the action.

their individual capacities, were exonerated. Judgment was entered June 23, 1980, for the damages and $25,000 in attorney fees.

After trial before the court in this indemnity action in May and June 1982, the court issued a tentative decision in which it found defendant was contractually obligated to timely record the CC & Rs and breached its contract when it failed to do so. It further found plaintiff acted reasonably in attempting to enforce the CC & Rs against the Rileys and that defendant was obligated to indemnify plaintiff for the damages assessed against plaintiff in the Riley action and for attorney fees in that action from the date of the tender of defense. The judgment as entered on June 13, 1983, ordered defendant to pay plaintiff $77,945.69 for the damages and the attorney fees in the slander of title action; $43,127.73 for attorney fees incurred in defending the slander of title action; and $30,000 in attorney fees for prosecuting the present indemnity action. The court also awarded interest on the damages and attorney fees incurred in the slander of title action and in defending the slander of title suit, computed from the date plaintiff filed the indemnity action (Dec. 29, 1976). The Rileys, who had intervened in the indemnity action, were not awarded attorney fees.

## DISCUSSION

### I

■ Defendant initially contends that if indemnity is proper, the damages should be apportioned on the basis of comparative fault principles as enunciated in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899]. Secondly, that even if the all-or-nothing approach of traditional common law indemnity were applicable to this case, plaintiff was precluded from recovering against defendant because (1) defendant was not a joint tortfeasor with respect to the Rileys' damages in the slander of title action and (2) plaintiff actively participated in the wrong against the Rileys. Neither contention has merit.

### A. *Applicability of American Motorcycle*

■ In general, "[i]ndemnity may be defined as the obligation resting on one party to make good a loss or damage another party has incurred. [Citation.] This obligation may be expressly provided for by contract [citation], it may be implied from a contract not specifically mentioning indemnity [citation], or it may arise from the equities of particular circumstances [citations]." (*Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 628 [119 Cal.Rptr. 449, 532 P.2d 97].)

The latter two forms of indemnity are generally classified under the heading of "implied indemnity." (See BAJI Nos. 12.61-12.69.) ■ As we stated in *Aerojet General Corp.* v. *D. Zelinsky & Sons* (1967) 249 Cal.App.2d 604, 607 [57 Cal.Rptr. 701]: "Implied indemnification may rest upon *equitable* considerations, impelled by a contrast between the secondary, passive role of one tortfeasor and the primary, active role of the other. [Citations.] It may also rest upon a *contractual relationship* between indemnitor and indemnitee, predicated upon the former's breach of an implied contract to perform the work carefully and to discharge foreseeable damages resulting from that breach." (Italics added.)

■ "The right of what may be termed *equitable* indemnity [citation] enures to a person who, without active fault on his part, has been compelled by reason of some legal obligation to pay damages occasioned by the initial and active negligence of another. This involves the equitable considerations of primary and secondary liability, or, to put it differently, concepts of active and passive conduct." (*S. F. Examiner Division* v. *Sweat* (1967) 248 Cal.App.2d 493, 497 [56 Cal.Rptr. 711]; italics added.)

The right to implied *contractual* indemnity rests upon entirely different grounds. "[W]here the right of implied indemnity arises from a contractual relationship between the indemnitor and the indemnitee, it is predicated upon the indemnitor's breach of such contract, the rationale of the cases being that a contract under which the indemnitor undertook to do work or perform services necessarily implied an obligation to do the work involved in a proper manner and to discharge foreseeable damages resulting from improper performance absent any participation by the indemnitee in the wrongful act precluding recovery." (*Great Western Furniture Co.* v. *Porter Corp.* (1965) 238 Cal.App.2d 502, 517 [48 Cal.Rptr. 76].) ■ In short, implied contractual indemnity is based upon the premise that a contractual obligation to perform "carries with it an implied agreement to indemnify and to discharge forseeable [*sic*] damages *resulting to the plaintiff* [indemnitee] from the defendants' [indemnitor's] negligent performance." (*Alisal Sanitary Dist.* v. *Kennedy* (1960) 180 Cal.App.2d 69, 79 [4 Cal.Rptr. 379]; [italics added]; see also *Weyerhaeuser S. S. Co.* v. *Nacirema Co.* (1958) 355 U.S. 563, 565-567 [2 L.Ed.2d 491, 493-494, 78 S.Ct. 438]; *Ryan Co.* v. *Pan-Atlantic Corp.* (1956) 350 U.S. 124, 129-132 [100 L.Ed. 133, 139-141, 76 S.Ct. 232]; *County of Alameda* v. *Southern Pac. Co.* (1961) 55 Cal.2d 479, 487 [11 Cal.Rptr. 751, 360 P.2d 327]; *Aerojet General Corp.* v. *D. Zelinsky & Sons, supra,* 249 Cal.App.2d at pp. 607-609; *Montgomery Ward & Co.* v. *KPIX Westinghouse Broadcasting Co.* (1962) 198 Cal.App.2d 759, 762 [18 Cal.Rptr. 341]; *S.F. Unified Sch. Dist.* v. *Cal. Bldg. etc. Co.* (1958) 162 Cal.App.2d 434, 444-449 [328 P.2d 785].)

█ *American Motorcycle* does not apply to the present case for two important reasons. First, *American Motorcycle* is concerned only with *equitable* indemnity (*Rodriguez* v. *McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 676 [151 Cal.Rptr. 399]). The *American Motorcycle* court did not purport to extend the principles of comparative indemnity to an action based on an *implied contract,* as is present in this case. The court examined the historical basis of common law equitable indemnity among cotortfeasors, noting that it "originated in the common sense proposition that when two individuals are responsible for a loss, but one of the two is more culpable than the other, it is only fair that the more culpable party should bear a greater share of the loss." (*American Motorcycle Assn., supra,* 20 Cal.3d 578, 593.) At the time the doctrine was enunciated common law precluded apportionment of fault on a comparative basis and courts took an all-or-nothing approach to equitable indemnity. Thus, courts endeavored to compare the actions of joint tortfeasors with terms like " 'active,' " " 'passive,' " " 'primary,' " " 'secondary,' " " 'positive,' " " 'negative,' " ill-defined terms which often led to inequitable results. (At p. 594.) The court concluded "the current *equitable indemnity* rule should be modified to permit a concurrent tortfeasor to obtain partial indemnity from *other concurrent tortfeasors* on a comparative fault basis." (At p. 598; italics added.)

Defendant's error lies in characterizing implied contractual indemnity as simply a form of equitable indemnity, logically subject to *American Motorcycle.* As noted, the theoretical underpinnings of implied contractual indemnity are entirely different than those underlying equitable indemnity, which is concerned with the difference between the primary and secondary liability of joint tortfeasors. █ "[W]here the right of implied indemnity rests upon a *contractual* relationship between the person seeking and the one resisting indemnity it is not necessary or appropriate to apply the theories of primary or secondary liability" applicable to *equitable* indemnity. (*Cahill Bros., Inc.* v. *Clementina Co.* (1962) 208 Cal.App.2d 367, 376 [25 Cal.Rptr. 301]; original italics; see also *Weyerhaeuser S. S. Co.* v. *Nacirema Co., supra,* 355 U.S. at p. 569 [2 L.Ed.2d at p. 495]; *Ryan Co.* v. *Pan-Atlantic Corp., supra,* 350 U.S. at pp. 132-133 [100 L.Ed. at p. 141].) Accordingly, implied contractual indemnity cannot be considered merely a form of the equitable indemnity with which *American Motorcycle* dealt.

█ Secondly, the present case does not involve joint tortfeasors as was the situation in *American Motorcycle.* Plaintiff seeks indemnity from defendant not as a joint tortfeasor with respect to the slander of the Rileys' title but for breach of a *contractual* obligation flowing from defendant *to plaintiff.* An action for implied contractual indemnity is not a claim for

contribution from a joint tortfeasor; it is not founded upon a tort or upon any duty which the indemnitor owes to the injured third party. It is grounded upon the indemnitor's breach of duty *owing to the indemnitee* to properly perform its contractual duties. (See *Ryan Co.* v. *Pan-Atlantic Corp., supra,* 350 U.S. at pp. 131-133 [100 L.Ed. at pp. 140-142]; *Great Western Furniture Co.* v. *Porter Corp., supra,* 238 Cal.App.2d at p. 517; *Cahill Bros., Inc.* v. *Clementina Co., supra,* 208 Cal.App.2d at p. 380; *County of L.A.* v. *Cox Bros. Constr. Co.* (1961) 195 Cal.App.2d 836, 840 [16 Cal.Rptr. 250]; *S.F. Unified Sch. Dist.* v. *Cal. Bldg. etc. Co., supra,* 162 Cal.App.2d at pp. 445-448, and cases cited therein.)

■ Tort principles do come into play in the sense of foreseeability in that the indemnitor's breach of contract must foreseeably result in the indemnitee being liable for damages to the injured third party. But there is no requirement that the damages be the result of a breach of duty owed by the indemnitor to the injured party or that the indemnitor be held jointly liable with the indemnitee. "[R]*egardless* of whether two parties may be joint tort feasors [*sic*], one may be required to indemnify the other if there is a contract expressed *or implied* to that effect." (*County of L.A.* v. *Cox Bros. Constr. Co., supra,* 195 Cal.App.2d at p. 840; italics added.)

*American Motorcycle* does not apply to implied contractual indemnity.

■ Defendant cites to *Kramer* v. *Cedu Foundation, Inc.* (1979) 93 Cal.App.3d 1 [155 Cal.Rptr. 552], in which the court concluded implied contractual indemnity is a form of equitable indemnity subject to the principles of comparative indemnity under *American Motorcycle.* (At pp. 12-13.) In characterizing implied contractual indemnity, the *Kramer* court stated: "Implied contractual indemnity is a form of equitable indemnity; it implies a contractual obligation to indemnify despite the absence of an express indemnity agreement where equitable considerations make it just to shift the loss to the other party." (At p. 12.) We cannot concur with the *Kramer* court's analysis and conclusion.

Implied contractual indemnity is not based upon equitable considerations, but upon a contractual relationship between the indemnitee and indemnitor from which is implied an obligation on the part of the indemnitor to assume and pay any foreseeable damages assessed against the indemnitee as a result of the indemnitor's breach of contract.

Nor do other cases cited by defendant support its position. In *City of Sacramento* v. *Gemsch Invest. Co.* (1981) 115 Cal.App.3d 869 [171 Cal.Rptr. 764], we determined only that *American Motorcycle* modified the

traditional *equitable* indemnity theory based upon concepts of passive/active, secondary/primary negligence. (At pp. 875-877.) We did not purport to determine whether *American Motorcycle* applies as well to implied contractual indemnity. We expressly determined there was no contractual relationship between the parties in that case. (At p. 875.)

Similarly, in *Turcon Construction, Inc.* v. *Norton-Villiers, Ltd.* (1983) 139 Cal.App.3d 280 [188 Cal.Rptr. 580], the court stated only that the primary/secondary, active/passive basis for *equitable* indemnity has been subsumed by *American Motorcycle.* (At p. 284.) To the same effect is *Kohn* v. *Superior Court* (1983) 142 Cal.App.3d 323 [191 Cal.Rptr. 78], wherein the court did not reach the issue of the applicability of *American Motorcycle* to implied contractual indemnity as the question of implied or express contractual indemnity was not presented to the trial court. (At p. 330.)

The trial court was not required to apply the comparative indemnity principles of *American Motorcycle* to the present case.

### B. *Joint Liability and Active Participation*

Defendant's next arrow is its contention that even if comparative indemnity does not apply, plaintiff is precluded from recovery. The bases of the assertion is (1) defendant was not jointly liable with plaintiff with respect to the injuries sustained by the Rileys, and (2) plaintiff actively participated in the wrong leading to the Rileys' injuries.

Defendant's reliance on its cited cases is misplaced. They are inapposite as they all involve *equitable* indemnity. ■ Implied contract cases may involve joint tortfeasors, but it is not necessary that an indemnitor be jointly liable with the indemnitee for the third party's injuries to recover on an implied indemnity contract. The court is concerned only with the obligations flowing between the indemnitor and the indemnitee, and whether the indemnitor breached an obligation which foreseeably resulted in the indemnitee being made liable for damages to the third party.

The trial court herein found defendant was contractually bound to record the CC & Rs for unit 3 and breached this contract when it failed to do so. The damage suffered by plaintiff in being found liable for slander of title was clearly a foreseeable result of this breach. Defendant's breach was the sole cause of the invalidity of the CC & Rs with respect to the Rileys' property. In recording the notice of violation, plaintiff was fulfilling its own obligations on the contract. Accordingly, it was foreseeable that plaintiff would attempt to enforce the CC & Rs and thereby be exposed to liability

for falsely disparaging the Rileys' title. While plaintiff's actions were essential to the disparagement of the Rileys' title, the chain of causation is not broken if plaintiff's act was reasonably foreseeable at the time of defendant's negligent conduct. (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 163 [95 Cal.Rptr. 623, 486 P.2d 151]; *Pappert* v. *San Diego Gas & Electric Co.* (1982) 137 Cal.App.3d 205, 210 [186 Cal.Rptr. 847].)

■ Defendant next contends plaintiff is not entitled to indemnity because it actively participated in the wrong leading to the Rileys' damages. We disagree.

The active/passive, primary/secondary distinctions relevant to equitable indemnity prior to *American Motorcycle* are not relevant to implied contractual indemnity. The degree of an indemnitee's participation in the indemnitor's wrong may be sufficient to preclude recovery on the implied contract theory but that limited principle has no application to this case. In *Cahill Bros., Inc.* v. *Clementina Co., supra,* 208 Cal.App.2d 367, the court observed that a mere finding of negligence on the part of the indemnitee in the underlying action does not per se preclude recovery from the indemnitor on implied contract as the duties owing from the indemnitee to the injured party are not necessarily the same as the duties owing from the indemnitor to the indemnitee. (At p. 381; see also *Weyerhaeuser S. S. Co.* v. *Nacirema Co., supra,* 355 U.S. at p. 568 [2 L.Ed.2d at p. 495].) ■ Reviewing prior cases, the court concluded: "The thrust of these cases is that if the person seeking indemnity personally participates in an affirmative act of negligence, or is physically connected with an act or omission by knowledge or acquiescence in it on his part, or fails to perform some duty in connection with the omission which he may have undertaken by virtue of his agreement, he is deprived of the right of indemnity." (208 Cal.App.2d at p. 382.) "The crux of the inquiry is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform the duty imposed upon him by law." (*Id.* at p. 381.) Subsequent cases have reiterated this rule. (See, e.g., *Gonzales* v. *R.J. Novick Constr. Co.* (1978) 20 Cal.3d 798, 811 [144 Cal.Rptr. 408, 575 P.2d 1190]; *Morgan* v. *Stubblefield* (1972) 6 Cal.3d 606, 625 [100 Cal.Rptr. 1, 493 P.2d 465]; *Goldman* v. *Ecco-Phoenix Elec. Corp.* (1964) 62 Cal.2d 40, 44 [41 Cal.Rptr. 73, 396 P.2d 377]; *Rodriguez* v. *McDonnell Douglas Corp., supra,* 87 Cal.App.3d at p. 675; *Aerojet General Corp.* v. *D. Zelinsky & Sons, supra,* 249 Cal.App.2d at p. 608.)

Whether an indemnitee actively participated in a wrong to the point of precluding indemnification depends on the circumstances of the case and is a question for the trier of fact. (*Rossmoor Sanitation, Inc.* v. *Pylon, Inc.,*

*supra,* 13 Cal.3d at p. 629; *Rodriguez* v. *McDonnell Douglas Corp., supra,* 87 Cal.App.3d at p. 675; *Baldwin Contracting Co.* v. *Winston Steel Works, Inc.* (1965) 236 Cal.App.2d 565, 572-573 [46 Cal.Rptr. 421]; *Cahill Bros., Inc.* v. *Clementina Co., supra,* 208 Cal.App.2d at p. 381.) The question becomes one of law only when the character of the indemnitee's conduct is so clear and undisputable that reasonable persons could not disagree. (*Rodriguez, supra,* 87 Cal.App.3d at pp. 675-676; *Cahill Bros., supra,* 208 Cal.App.2d at pp. 382-383.)

 In the present case, the trial court found plaintiff was not negligent in its conduct, and acted reasonably in attempting to enforce the CC & Rs against the Rileys. This finding is supported by substantial evidence. When plaintiff initially filed the notice of violation, it was fulfilling its own contractual obligation to administer and enforce the CC & Rs. At that time it was not aware of any problem with the enforceability of the CC & Rs nor did it have any duty to inquire into this matter, as it was defendant's duty to ensure the lots were burdened with the CC & Rs. Plaintiff did discover the CC & Rs were not timely recorded when it could still have avoided a lawsuit. However, considering the state of the law at that time it was not unreasonable for it to believe the Rileys' actual knowledge of and prior compliance with the CC & Rs was sufficient to render them enforceable. It was necessary for the Supreme Court to finally settle that issue.

Defendant asserts plaintiff was necessarily an active participant in the wrong as there would have been no slander of the Rileys' title without the active conduct of plaintiff in recording the notice of violation. But plaintiff acted reasonably in compliance with its own contractual obligation in enforcing the CC & Rs and such action was foreseeable. Nor would plaintiff have been exposed to liability for false disparagement of title if defendant had not rendered the notice of violation false by its failure to burden the lots with CC & Rs. Mere "active conduct" does not preclude indemnification. It is active negligence or active participation in the wrong on plaintiff's part, an issue in which the trial court found for plaintiff.

*Cahill Bros., supra,* 208 Cal.App.2d 367, relied on by defendant, is factually inapposite. The somewhat unusual factual situation in *Cahill* was that the same person, the "ubiquitous" Larkin, was both the subcontractor and the superintendent for the general contractor on the demolition job on which a passing pedestrian was injured. While acting in this dual capacity, he caused some barricades to be negligently constructed, which negligence caused injury to the third party pedestrian. In reversing an indemnity award for the general contractor, the court stated the general contractor was actively negligent in causing the third party injury by reason of its superin-

tendent's negligence, which was imputed to the general contractor under the doctrine of respondeat superior. Indemnity was therefore precluded.

Finally, defendant contends plaintiff is estopped by res judicata from asserting it was not actively negligent because of the judgment against it in the slander of title action. Res judicata applies only if the issue decided in the prior action was identical with the one presented in the present action. (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 892]; *S.F. Unified Sch. Dist.* v. *Cal. Bldg. etc. Co., supra,* 162 Cal.App.2d at p. 443.) The slander of title action addressed only the issue of plaintiff's liability to the Rileys; it did not address the obligations flowing between defendant and plaintiff on the implied contract. The issue of whether plaintiff's conduct was sufficient to preclude recovery on the implied contract was never decided in the slander of title action. In fact, between the parties to the present action, no issues were raised or determined in the prior action.

Accordingly, we hold the trial court properly determined defendant was obligated to indemnify plaintiff on the basis of an implied contract to discharge damages foreseeably sustained by plaintiff as a result of defendant's breach of promise to timely record the CC & Rs for unit 3 of the subdivision.

## II

Defendant next contends the trial court erred in awarding plaintiff attorney fees it incurred in defending the slander of title action.

Both parties rely on *Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618 [30 Cal.Rptr. 821, 381 P.2d 645], and *Davis* v. *Air Technical Industries, Inc.* (1978) 22 Cal.3d 1 [148 Cal.Rptr. 419, 582 P.2d 1010]. In *Prentice* vendors of land sued the buyer, lender and escrow holder for damages resulting from the escrow holder's negligence in closing the sale. Plaintiffs prevailed and the trial court awarded as damages against the escrow holder the attorney fees incurred by plaintiffs in prosecuting the complaint against the buyer and lender. The Supreme Court affirmed, establishing an exception to the general rule that each party is to bear his own attorney fees: a "person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." (*Prentice, supra,* 59 Cal.2d at p. 620.) The basis of the rule is that attorney fees incurred in prosecuting the underlying action are

recoverable as an item of damages in the action against the indemnitor. (*Prentice, supra,* at p. 621.)

In *Davis,* the Supreme Court emphasized that *Prentice* carved out only a limited exception to the general rule. *Davis* was a products liability action against the manufacturer and seller of a defective elevator in which both defendants were found strictly liable. The seller cross-complained against the manufacturer for indemnity and attorney fees incurred in defending the principal action. In a separate trial on the indemnity cross-complaint, the court found the seller was not negligent in the principal action and awarded the seller indemnification for the damages and attorney fees incurred in defending the principal action. The Supreme Court reversed the award of attorney fees, holding that an indemnity plaintiff may not recover attorney fees incurred in the principal action where the plaintiff acted solely in defense of his own independent wrongdoing. (*Davis, supra,* 22 Cal.3d at pp. 4-5.) The court stated the *Prentice* exception applies only to cases involving "'exceptional circumstances.'" (At p. 7.)

We need not determine the applicability of *Prentice* and *Davis* in the case before us as the question of attorney fees in implied indemnity actions is now governed by section 1021.6 of the Code of Civil Procedure.[3] Section 1021.6 was enacted in 1979 (Stats. 1979, ch. 289, § 1) reportedly to overrule *Davis* and to permit an indemnitee to recover attorney fees incurred in the principal action where that indemnitee is determined to be without fault in that action. (See Assem. Com. on Judiciary, Bill Digest of Assem. Bill No. 1603 (1979-1980 Reg. Sess.); Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1603 (1979-1980 Reg. Sess); Governor's Enrolled Bill Rep. on Assem. Bill No. 1603 (July 18, 1979); Legis. Counsel's Dig. of Assem. Bill No. 1603, 4 Stats. 1979 (Reg. Sess.) Summary Dig., p. 82.) We consider its applicability to the present case.

■ It is undisputed plaintiff properly notified defendant of its demand to defend the slander of title action and that defendant refused, thereby satisfying the requirement of subdivision (b) of section 1021.6. Defendant contends plaintiff did not meet the requirements of subdivisions (a) and (c).

---

[3]Code of Civil Procedure section 1021.6, provides: "Upon motion, a court after reviewing the evidence in the principal case may award attorney's fees to a person who prevails on a claim for implied indemnity if the court finds (a) that the indemnitee through the tort of the indemnitor has been required to act in the protection of the indemnitee's interest by bringing an action against or defending an action by a third person and (b) if that indemnitor was properly notified of the demand to bring the action or provide the defense and did not avail itself of the opportunity to do so, and (c) that the trier of fact determined that the indemnitee was without fault in the principal case which is the basis for the action in indemnity or that the indemnitee had a final judgment entered in his or her favor granting a summary judgment, a nonsuit, or a directed verdict."

As to subdivision (a), defendant asserts no act on its part required plaintiff to defend the Riley action; that it was plaintiff's own independent tortious conduct which directly instigated the action. In so asserting, defendant reprises its joint tortfeasor refrain and omits the lyrics that but for defendant's breach of contract in failing to properly burden the lots with the CC & Rs, there would have been no action against plaintiff. We conclude plaintiff met the requirement of subdivision (a) of section 1021.6.

As to subdivision (c), defendant contends plaintiff was not determined to be "without fault" in the principal action. Again, the trial court in the present action found plaintiff was without fault in the principal action, and acted reasonably to enforce the CC & Rs against the Rileys. Defendant fails to distinguish between the trier of fact in the *principal* action and the trier of fact in the *indemnity* action. Subdivision (c) refers to the trier of fact in the indemnity action. The issue in the principal action is whether the indemnitee is liable for the damages suffered by the injured party. It is the *indemnity* action in which the trier of fact must determine whether the indemnitee's conduct was of a nature to preclude recovery of implied indemnity. That the indemnitee was found liable for damages in the principal action forms no basis for denying attorney fees in the indemnity action. That the indemnitee was found liable for damages in the principal action is the basis for the indemnity action and the award of attorney fees therein.

The court properly awarded plaintiff attorney fees incurred in defending the Riley action.

### III

██ Defendant next contends the court erred in awarding plaintiff attorney fees under section 1021.6 for those incurred in bringing the *present* action. We agree with defendant.

Although section 1021.6 is not limited on its face, the *Prentice-Davis* line of cases to which section 1021.6 responds dealt with the issue of whether an indemnity plaintiff is entitled to attorney fees incurred in the *underlying action*. It is apparent from the legislative intent materials on section 1021.6 that the Legislature intended it to apply only to those fees incurred in the underlying action. (See Assem. Com. on Judiciary, Bill Digest of Assem. Bill No. 1603, *supra;* Governor's Enrolled Bill Rep. on Assem. Bill No. 1603, *supra.*) For example, the Governor's Enrolled Bill Report on the legislation states "[t]his bill would authorize the court to award attorneys' fees to a party seeking indemnification *for the costs of defending a claim*

based on the conduct of another." (Governor's Enrolled Bill Rep. on Assem. Bill No. 1603, *supra,* at p. 3; italics added.)

As the Supreme Court stated in *Prentice, supra,* (the language of which § 1021.6, subd. (a), tracks), attorney fees incurred in the underlying action are akin to damages suffered by the indemnitee because of the indemnitor's conduct, as "the natural and proximate consequence of defendant's negligence was to require plaintiffs to file" the underlying action. Accordingly the plaintiffs "were entitled to recover from defendant *as damages* reasonable compensation for attorney's fees incurred by them *in their litigation with such third parties.*" (*Prentice, supra,* 59 Cal.2d at p. 621; italics added.)

Section 1021.6 reflects this rationale by establishing that the underlying action be one which the indemnitee was "required" to bring or defend "through the tort of the indemnitor"; that the indemnitor refused proper demand to bring or defend the action; and that no fault of the indemnitee was responsible for the underlying action. Section 1021.6 imposes liability on the indemnitor to pay those attorney fees which it caused the indemnitee to incur in the underlying action.

In the indemnity action, however, the plaintiff occupies no different position than any other plaintiff seeking to recover damages proximately caused by the defendant. As to attorney fees in the present action, plaintiff does not come within the statutory exception of section 1021.6, but is subject to the general rule of section 1021 that the parties bear their own fees, except as provided by specific statute or express or implied agreement. There being no agreement with respect to attorney fees or any other statutory exception, plaintiff must bear its own fees in prosecuting the present action.

IV

Defendant finally contends the court erred in computing interest on the damages and attorney fees incurred in the Riley action from the date plaintiff filed the indemnity action, December 29, 1976. The court based its award upon Civil Code section 3287, subdivision (b), which provides: "Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed."

Prior to the enactment of subdivision (b) in 1967, prejudgment interest was permitted only where damages were certain or capable of being made certain (i.e., were liquidated) when the right to recover them vested. (See *A & M Produce Co.* v. *FMC Corp.* (1982) 135 Cal.App.3d 473, 496 [186 Cal.Rptr. 114]; Civ. Code, § 3287, subd. (a).) ▉▉▉ Subdivision (b) granted discretion to the trial court to award prejudgment interest in cases where damages were unliquidated at the time the right to such damages vested. (*Ibid.*)

Defendant initially asserts section 3287, subdivision (b), is not applicable to the present case as it is not one in contract. We reiterate our finding that the present action is based on an implied contract to indemnify; it was grounded upon the specific agreement of the parties and was a cause of action in contract within the meaning of section 3287, subdivision (b). (*Zalk* v. *General Exploration Co.* (1980) 105 Cal.App.3d 786, 794-795 [164 Cal.Rptr. 647].)

Having dispensed with that repetitive argument, we do not find subdivision (b) applicable. ▉▉▉ The damages herein are subject to subdivision (a) of section 3287, which provides in part: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, . . ."

Plaintiff's right to recover on defendant's implied promise to discharge damages for which plaintiff became liable did not become fixed and vested until judgment was entered against plaintiff in the Riley action on June 23, 1980. This follows because "[u]ntil the amount of the damages was determined by a judgment or a compromise with the injured party, the indemnitor would have no way of either measuring or discharging his duty to his indemnitee." (*Vegetable Oil Products Co.* v. *Superior Court* (1963) 213 Cal.App.2d 252, 257 [28 Cal.Rptr. 555].) At the time the Riley judgment was entered against plaintiff, plaintiff's right to indemnity vested and its damages were certain. Plaintiff is entitled only to prejudgment interest on damages in the indemnity action from the date judgment was entered against it in the Riley action. To uphold this award by the trial court of prejudgment interest would permit plaintiff a windfall recovery of interest for nearly four years which intervened between the time the cause of action arose on the implied indemnity contract (June 23, 1980) and the time the action for indemnity was filed (Dec. 29, 1976).

The cases upon which plaintiff and the Rileys rely are distinguishable. In *Esgro Central, Inc.* v. *General Ins. Co.* (1971) 20 Cal.App.3d 1054 [98

Cal.Rptr. 153], an action brought by an insured against its insurer on the basis of *express* indemnity contracts, two insurance policies were involved. As to one policy, subdivision (b) of section 3287 was applicable as the sole dispute in the indemnity action against the insurer was the extent of damages covered by the policy, an issue which required judicial determination on the basis of conflicting evidence. The damages on the insured's claim were thus unliquidated when the insured sought indemnity from the insurer. (At pp. 1063-1064.) ■■■■ In the present case, plaintiff's damages were liquidated well before the indemnity action went to trial. As to the other policy in the *Esgro* case, the sole dispute involved the insurer's denial of coverage; the damages were fixed and determinable. The court treated those damages under subdivision (a) of section 3287. (At pp. 1061-1062.)

*Zalk* v. *General Exploration Co.*, *supra*, 105 Cal.App.3d 786, and *A & M Produce Co.* v. *FMC Corp.*, *supra*, 135 Cal.App.3d 473 are also cases in which damages were in dispute and therefore unliquidated. Subdivision (b) of section 3287 was applicable.

We conclude the trial court erred in awarding prejudgment interest on the Riley damages from the date plaintiff filed its indemnity action. In accordance with Civil Code section 3287, subdivision (a), plaintiff is entitled to interest from the date on which judgment was entered against it in the Riley action, June 23, 1980.

## V

■■■■ The attorney fees incurred in defending the Riley action present a different problem. The interest thereon was awarded pursuant to section 1021.6, Code of Civil Procedure, presumably as prejudgment interest. But prejudgment interest is defined as "interest that may be awarded on the claim from the time it was originally due until the time of judgment." (Dobbs, Law of Remedies (1973) § 3.5, p. 164; see also, McCormick, Damages (1935) § 50, p. 205; Comment, *The Availability of Prejudgment Interest in Personal Injury and Wrongful Death Cases* (1982) 16 U.S.F. L.Rev. 325, 327.) It's purpose is to compensate a party for money detained during the period of time from the accrual of the claim to the judgment. An award of prejudgment interest presupposes the prevailing party was entitled to the payment of an amount of money, whether liquidated or unliquidated, on a certain date prior to the judgment.

Plaintiff had no prejudgment "entitlement" to attorney fees under section 1021.6. Such fees are allowed only by virtue of the statute, which by its language vests discretion within the trial court to determine whether or not

to award such fees. Once the court decides to award fees, it is further within its discretion to fix a reasonable amount, after considering factors such as the nature of the litigation, its difficulty, the amount involved, the skill required, the skill employed, the attention given, the success or failure, and the attorney's skill and learning. (*La Mesa-Spring Valley School Dist.* v. *Otsuka* (1962) 57 Cal.2d 309, 316 [19 Cal.Rptr. 479, 369 P.2d 7]; *Melnyk* v. *Robledo* (1976) 64 Cal.App.3d 618, 623-624 [134 Cal.Rptr. 602].) The right to recover attorney fees under section 1021.6 "vests" and the amount is fixed only when the trial court grants a motion for such fees. Interest is allowable only from that date. (Civ. Code, § 3287, subd. (a).) The award is the same as the usual judgment award wherein the prevailing party is entitled to interest from the date the decision is made or rendered. (Code Civ. Proc., § 1033.)

## VI

Finally, the Rileys contend on cross-appeal that they were also entitled to attorney fees pursuant to Code of Civil Procedure section 1021.6. As lienors upon the plaintiff's judgment and interveners in this action, they assert they are "person[s] who prevail[ed] on a claim for implied indemnity" within the meaning of section 1021.6. This contention is patently meritless.

First, the Rileys did not "prevail on a claim for implied indemnity" as they had no claim for indemnity against defendant. The claim for indemnity was entirely plaintiff's. The Rileys' only interest in the matter was satisfying its judgment for slander of title. The indemnity action is a matter exclusively between plaintiff and defendant to determine who will ultimately pay the judgment. The Rileys have already prevailed in their slander of title action. Irrespective of which party prevailed in the indemnity action the Rileys were entitled to have their judgment paid if they could find any money with which to do it.

Second, section 1021.6 read as a whole, clearly applies only to an *indemnitee* who prevails on a claim against an indemnitor. The prerequisites to recovery of attorney fees refer only to the indemnitee: the indemnitee was required to bring or defend the underlying action; the indemnitee notified the indemnitor of its demand to bring or defend the action; and the indemnitee was without fault in the underlying action. The court did not err in failing to award attorney fees to the Rileys.

### DISPOSITION

The judgment is reversed with respect to the award of interest, with directions to modify the judgment to allow prejudgment interest on the dam-

ages and attorney fees in the Riley action from the date on which the judgment was entered against plaintiff for such damages and fees and to strike prejudgment interest on the attorney fees awarded plaintiff in the present action. The portion of the judgment awarding plaintiff attorney fees incurred in prosecuting the present indemnity action is also reversed. In all other respects, the judgment is affirmed.

Regan, Acting P. J., and Mering, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.