[No. C028935. Third Dist. Dec. 18, 1998.]

CHARLES WATSON, Cross-complainant and Respondent, v.
DEPARTMENT OF TRANSPORTATION, Cross-defendant and
Appellant.

## COUNSEL

William M. McMillan; George Cory; Daniel A. Near; and Kenneth G. Nellis for Cross-defendant and Appellant.

Edson, Laplante & Spinelli and Ross R. Nott for Cross-complainant and Respondent.

## OPINION

**BLEASE, Acting P. J.**—After an automobile collision between her car and one driven by Charles Watson at a traffic intersection, arising from the resetting of the traffic signals by a California Department of Transportation (Caltrans) employee, Patty Huffman sued Caltrans and Watson for personal injury. The jury found Huffman and Caltrans at fault and Watson not at fault. Watson thereafter recovered a judgment on a cross-complaint against Caltrans awarding him the attorney's fees incurred in the defense.

Caltrans appeals from the judgment contending the trial court erred in awarding attorney's fees under Code of Civil Procedure section 1021.6 in these circumstances.[1] We agree.

---

[1]Hereafter section 1021.6. Section 1021.6 is as follows: "Upon motion, a court after reviewing the evidence in the principal case may award attorney's fees to a person who prevails on a claim for implied indemnity if the court finds (a) that the indemnitee through the tort of the indemnitor has been required to act in the protection of the indemnitee's interest by bringing an action against or defending an action by a third person and (b) if that indemnitor was properly notified of the demand to bring the action or provide the defense and did not avail itself of the opportunity to do so, and (c) that the trier of fact determined that the indemnitee was without fault in the principal case which is the basis for the action in

Section 1021.6 does not provide a way around the American rule that each party to a lawsuit must pay his or her own attorney's fees in the commonplace case of a multiparty tort action.

We will reverse the judgment.

### FACTS AND PROCEDURAL BACKGROUND

On June 5, 1995, a power outage affected traffic control signals at the intersection of Bridge Street and Highway 99 in Yuba City. The traffic lights were flashing red in all directions. Watson drove into the intersection and stopped because his vision of the southbound lanes of Highway 99 was obstructed by traffic in the turning lane.

In the interim, a Caltrans signal maintenance crew member reset the traffic control signal box which resulted in the lights turning to green for the Highway 99 through lanes. Patty Huffman, talking on her cell phone while driving south on Highway 99, drove into the intersection and her vehicle collided with Watson's.

Huffman sued Caltrans and Watson to recover damages for personal injury, alleging that both had been negligent. Watson cross-complained against Caltrans on a theory of equitable indemnity or, in the alternative, indemnity for comparative fault.[2]

After trial on Huffman's complaint, the jury returned a special verdict with findings that Caltrans was negligent and bore 90 percent of the fault,

indemnity or that the indemnitee had a final judgment entered in his or her favor granting a summary judgment, a nonsuit, or a directed verdict."

[2] The cross-complaint, on an official form developed and approved by the Judicial Council, contains three counts pertaining to indemnity. One seeks apportionment and reimbursement under *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899]. A second, styled cause of action for indemnification contains the following pertinent stock allegations.

"b. The principal action alleges among other things conduct entitling plaintiff to compensatory damages against me. I contend that I am not liable for events and occurrences described in plaintiff's complaint.

"c. If I am found in some manner responsible to plaintiff or to anyone else as a result of the incidents and occurrences described in plaintiff's complaint, my liability would be based solely upon a derivative form of liability not resulting from my conduct, but only from an obligation imposed upon me by law; therefore, I would be entitled to complete indemnity from each cross-defendant."

The third count of the cross-complaint, styled a cause of action for declaratory relief, asserts that a controversy concerning rights and duties exists because: "cross-defendants, and each of them, are liable to plaintiff for active primary and direct negligence, whereas cross-complainant's conduct was secondary, passive, and indirect."

Watson was not negligent, and Huffman was negligent and bore 10 percent of the fault.

Watson then filed a motion for recovery of his attorney's fees from Caltrans under section 1021.6. As to tender of his defense of the Huffman action to Caltrans, Watson relied on his government tort claim which requested damages in the nature of "equitable indemnity subrogation and comparative fault," not yet ascertained because "[Watson's] damages are contingent on the amount of Huffman's damages" and his ensuing cross-complaint.

Caltrans opposed the motion on the ground Watson failed to tender the defense of Huffman's action to Caltrans. Caltrans argued the government tort claim was not a tender of the defense. Caltrans also argued that if the defense had been tendered it would have been "graciously accepted," as evidenced by its counsel's averment that he had offered to defend Watson when the cross-complaint had been filed, but that offer had been rejected.

Watson's rejoinder included a declaration of his former counsel that no such offer had been made.

The trial court granted Watson's motion. Caltrans appeals from the ensuing judgment for $21,564.12 in attorney's fees and costs on Watson's cross-complaint.

DISCUSSION

I

*Theory of Trial*

■ Caltrans claims the trial court erred in granting a judgment for attorney's fees in favor of Watson on his cross-complaint under section 1021.6 because he did not "prevail on a claim of implied indemnity," as required by the statute. Watson replies the claim is waived under the doctrine of theory of trial. We conclude the theory of trial does not bar review of the claim.

■ "Where the parties try the case on the assumption that a cause of action is stated, that certain issues are raised by the pleadings, that a particular issue is controlling, or that other steps affecting the course of the trial are correct, neither party can change this theory for purposes of review on appeal." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 399, pp. 451-452.) However, there are exceptions to this rule.

"[The] application [of the doctrine] is discretionary with the reviewing court, and several loose exceptions have been recognized:

"(1) *Fundamental Error.* A court may refuse to follow the doctrine where the error is too fundamental to be ignored, e.g., in cases of illegality, unclean hands, complete failure to state a cause of action, or variance so fundamental as to constitute 'departure' or failure of proof. [Citations.]

"(2) *Issue Solely Legal.* A change in theory may be permitted where the issue is one of law alone. (See infra, § 407.)" (*9 Witkin, Cal. Procedure, supra,* Appeal, § 406, p. 457; see also *id.,* § 407, p. 459.)

▪ Under these exceptions a "fundamental error" occurs when there is a "complete failure to state a cause of action . . . ." The recovery of attorney's fees may be had under section 1021.6 only on a cause of action for implied indemnity. Where there is no such cause, a judgment for attorney's fees is "fundamental error."

It is a question of law whether Watson prevailed on a claim for implied indemnity in the principal case. (*Uniroyal Chemical Co.* v. *American Vanguard Corp.* (1988) 203 Cal.App.3d 285, 292 [249 Cal.Rptr. 787].) Watson argues that *Uniroyal* supports his position because the court of appeal in that case declined to consider a point not raised in the trial court. (*Id.* at p. 296.) However, the *Uniroyal Chemical Co.* opinion only recites the general rule of theory of trial. It does not consider the exceptions from the general rule and cannot be read to say they do not apply to appeals from orders under section 1021.6.

Accordingly, the doctrine of theory of trial does not bar review of the question whether section 1021.6 applies on the facts of this case.

We turn to that question.

II

*Indemnity Cannot Be Predicated Upon American
Motorcycle Assn. v. Superior Court*

Section 1021.6 does not establish the criteria for an implied indemnity. It presupposes the existence of "a claim for implied indemnity" on which the party seeking attorney's fees has prevailed. For this reason a claim for implied indemnity must be established under the existing law of indemnity.

▪ Caltrans argues that on the facts in this case there was no relationship between itself and Watson giving rise to indemnity under the established categories of implied indemnity, e.g., implied contractual indemnity,

vicarious liability, or an intentional tort giving rise to complete equitable indemnity. (See Rest.2d Torts, § 886B.)[3] We agree.

The only other conceivable theory of indemnity is partial indemnity from other concurrent tortfeasors under *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578. However, as Caltrans notes, that theory is inapplicable because Watson was found not to have been a concurrent tortfeasor, and if he had been such a tortfeasor, he could not have recovered under section 1021.6 because subdivision (c) requires an absence of fault.[4]

Watson replies that Caltrans has a crabbed view of the *American Motorcycle* rule. He relies on the following passage in *Far West Financial Corp.* v. *D & S Co.* (1988) 46 Cal.3d 796, 808 [251 Cal.Rptr. 202, 760 P.2d 399], which comments on *American Motorcycle.*

---

[3]The Restatement Second of Torts section 886B provides:

"(1) If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.

"(2) Instances in which indemnity is granted under this principle include the following:

"(a) The indemnitee was liable only vicariously for the conduct of the indemnitor;

"(b) The indemnitee acted pursuant to directions of the indemnitor and reasonably believed the directions to be lawful;

"(c) The indemnitee was induced to act by a misrepresentation on the part of the indemnitor, upon which he justifiably relied;

"(d) The indemnitor supplied a defective chattel or performed defective work upon land or buildings as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect;

"(e) The indemnitor created a dangerous condition of land or chattels as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect;

"(f) The indemnitor was under a duty to the indemnitee to protect him against the liability to the third person."

[4]*Bear Creek Planning Com.* v. *Title Ins. & Trust Co.* (1985) 164 Cal.App.3d 1227 [211 Cal.Rptr. 172] holds that a defendant may be found at fault in the principal action and yet be eligible for implied *contractual* indemnity. In such a case the question is whether an indemnitee "actively participated in a wrong to the point of precluding indemnification . . . ." (*Id.* at p. 1241.)

As applied to the case at hand, the court said: "As to subdivision (c), defendant contends plaintiff was not determined to be 'without fault' in the principal action. Again, the trial court in the present action found plaintiff was without fault in the principal action, and acted reasonably to enforce the CC & Rs against the Rileys. Defendant fails to distinguish between the trier of fact in the *principal* action and the trier of fact in the *indemnity* action. Subdivision (c) refers to the trier of fact in the indemnity action. The issue in the principal action is whether the indemnitee is liable for the damages suffered by the injured party. It is the *indemnity* action in which the trier of fact must determine whether the indemnitee's conduct was of a nature to preclude recovery of implied indemnity. That the indemnitee was found liable for damages in the principal action forms no basis for denying attorney fees in the indemnity action. That the indemnitee was found liable for damages in the principal action is the basis for the indemnity action and the award of attorney fees therein." (164 Cal.App.3d at p. 1245, original italics.)

"*People* ex rel. *Dept. of Transportation* [(1980)] 26 Cal.3d 744 [163 Cal.Rptr. 585, 608 P.2d 673], makes it clear that after *American Motorcycle, supra,* 20 Cal.3d 578, there are not two separate equitable indemnity doctrines in California, but a single 'comparative indemnity' doctrine which permits partial indemnification on a comparative fault basis in appropriate cases. To be sure there is nothing in either *American Motorcycle* or *People* ex rel. *Dept. of Transportation* which suggests that it would necessarily be improper, in a comparative indemnity action, for a trier of fact to determine that the facts and equities in a particular case support a complete shifting of a loss from one tortfeasor to another, rather than, for example, a 60 percent/40 percent or 95 percent/5 percent division of the loss. (Cf. *E.L. White, Inc.* v. *City of Huntington Beach* (1982) 138 Cal.App.3d 366, 373-377 [187 Cal.Rptr. 879].) Even when such a total shift of loss may be appropriate, however, the indemnitee's equitable indemnity claim does not differ in its fundamental nature from other comparative equitable indemnity claims. Accordingly, we think the Court of Appeal in *Standard Pacific of San Diego* v. *A. A. Baxter Corp.* [(1986)] 176 Cal.App.3d 577, 587-588 [222 Cal.Rptr. 106], properly analyzed the teaching of *People* ex rel. *Dept. of Transportation, supra,* 26 Cal.3d 744, when it observed that '[c]omparative equitable indemnity includes the entire range of possible apportionments, from no right to any indemnity to a right of complete indemnity. Total indemnification is just one end of the spectrum of comparative equitable indemnification.' " (46 Cal.3d at p. 808, fn. omitted.)

Watson submits that under this view of *American Motorcycle* "[t]otal equitable indemnity [arises] where one alleged joint tortfeasor is found to be 'zero percent' at fault while another one bears some or all of the responsibility for the accident." This formulation contains a slight but material semantic shift in the applicable language. The indemnity liability, which *Far West Financial Corp.* v. *D & S Co., supra,* 46 Cal.3d 796, refers to as involving "one tortfeasor to another [tortfeasor]," has been transmuted by Watson into the relationship of one tortfeasor to another "*alleged* joint tortfeasor." (Italics added.) The difference is critical.

*Far West Financial Corp.* says the fault of every tortfeasor lies on a continuum between 0 and 100 percent. It does not state that one found to be 0 percent at fault is a tortfeasor. A tortfeasor is one who is liable for damages to the injured plaintiff. If the alleged tortfeasor is not liable at all no tenable claim can be made for indemnity under the *American Motorcycle* partial indemnification doctrine. For this reason section 1021.6 has no application derived from that doctrine. (Also see, e.g., Rest.2d Torts, § 886B(1) ["If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to

indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability."].)

As to joint tortfeasors, it does not follow from the fact that a codefendant, who is at fault, has a duty to indemnify a defendant free of fault that the duty extends to the payment of attorney's fees. For example, suppose the codefendants are the manufacturer of a defective automobile brake, the retailer who sold the defective brake to the plaintiff, and a motorist who negligently collided with the plaintiff. If the retailer is found not at fault, it does not follow that it is entitled to a defense from or can recover its attorney's fees from the codefendant motorist found to have been at fault along with the manufacturer.

For the foregoing reasons, we conclude that liability for implied indemnity cannot be founded merely upon the absence of fault of one codefendant.

## III

### *The Tort of Another*

Watson next asserts he has a tenable claim for indemnity under the "tort of another" doctrine articulated in *Prentice* v. *North Amer. Title Guaranty Corp.* (1963) 59 Cal.2d 618 [30 Cal.Rptr. 821, 381 P.2d 645].[5]

*Prentice* expressed the doctrine as follows: "A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." (*Prentice* v. *North Amer. Title Guaranty Corp.*, *supra*, 59 Cal.2d at p. 620.) Watson submits he is a person who, because of the tort of another, Caltrans, has been required to act in the protection of his interests by defending an action against a third person, Huffman.

The claim was summarily rejected in *Davis* v. *Air Technical Industries, Inc.* (1978) 22 Cal.3d 1, 7, footnote 9 [148 Cal.Rptr. 419, 582 P.2d 1010]: "[T]he *Prentice* language cited by respondent . . . could be read to entitle exonerated defendants in commonplace, multiparty tort actions to recover their attorney's fees from unrelated codefendants who were held liable. Such

---

[5]In *Prentice* the court held that a paid escrow holder who negligently closed a sale of realty which resulted in the seller being required to sue the buyer and the beneficiary of a first deed of trust to recover the property and clear the title was liable for the attorney's fees incurred in that litigation. The *Prentice* opinion does not discuss the basis of the duty of the escrow holder to the seller. The apparent basis of the duty is their contractual relationship.

a rule was not intended by this court."[6] (Also see, e.g., *Sooy* v. *Peter* (1990) 220 Cal.App.3d 1305, 1310 [270 Cal.Rptr. 151] [The indemnity to which *Prentice* speaks is founded upon the traditional tort duty between indemnitee and indemnitor.]; see generally, *Andalon* v. *Superior Court* (1984) 162 Cal.App.3d 600, 610 [208 Cal.Rptr. 899] [in applying a generalized statement of liability the focus must be on the policy by which an existing duty is extended].)

The extension of the *Prentice* rule to the commonplace case of an exonerated alleged tortfeasor would go a long way toward abrogation of the American rule that each party to a lawsuit must ordinarily pay his or her own attorney's fees. It would substantially expand the notion of duty under the law of torts to compensation of the litigation expenses incurred by all persons, however connected to any tortious event, whom the injured plaintiff elects to sue who succeed in establishing lack of liability. Watson makes no policy argument justifying such an extension of duty. There is no warrant for such a wholesale extension in the general language of *Prentice*.

Watson makes only one narrower claim of duty. He also founds the duty of indemnity on Caltrans's duty to him as a motorist to maintain the intersection in a safe condition and to correct any dangerous condition within a reasonable period of time. This duty is imposed on Caltrans to protect Watson's interest in the avoidance of bodily injury to himself or damage to his chattels, e.g., his automobile. This differs in kind from a duty of indemnity to hold Watson harmless from the consequences of such an injury to a third party.[7] Every motorist owes a duty of care to avoid injury to other motorists. When an injured motorist sues two or more other motorists,

---

[6]This assertion in *Davis* was not impugned by the enactment of section 1021.6.

As noted, section 1021.6 does not supply or modify the criteria for establishing a claim of indemnity. We are aware of the view that "[s]ection 1021.6 was enacted . . . reportedly to overrule *Davis* and to permit an indemnitee to recover attorney fees incurred in the principal action where the indemnitee is determined to be without fault in that action." (*Bear Creek Planning Com.* v. *Title Ins. & Trust Co., supra,* 164 Cal.App.3d at p. 1244; also see, e.g., *Uniroyal Chemical Co.* v. *American Vanguard Corp., supra,* 203 Cal.App.3d at p. 297; *Fidelity Mortgage Trustee Service, Inc.* v. *Ridgegate East Homeowners Assn.* (1994) 27 Cal.App.4th 503, 514 [32 Cal.Rptr.2d 521].) However, *Davis* held that a person claiming a duty of indemnity from a manufacturer of a defective product as a retailer of the product could not recover for attorney's fees expended in defense of a related negligence claim. That rule is well established. Hence, assuming that section 1021.6 supplies a different rule than *Davis,* it does not differ concerning the *existence* of a duty; rather it differs only in the scope of an existing duty.

[7]There is a duty of indemnity which arises under the common law in cases of premises liability in circumstances in which two persons are charged with liability because of a dangerous condition of land as a result of which both became liable to a third person. (See Rest.2d Torts, § 886B(2)(e); Rest., Restitution, § 95.) No such duty arises here. Watson had no relation to the premises (the intersection) other than as a motorist. There is no tenable

their duty to avoid injury to each other is immaterial to the question whether there is a duty of indemnity between the defendants. That duty must be founded upon a relationship which under the exemplars of the common law or statute gives rise to a duty of complete indemnity, as to which an ancillary duty to defend arises.[8] Watson identifies no such duty in the facts of this case.

Accordingly, we conclude there is no "claim for implied indemnity" on which Watson could be deemed to have prevailed, hence, section 1021.6 is inapplicable. The trial court erred in awarding judgment for Watson on his cross-complaint.

In light of this conclusion we need not address any of the other points raised in the briefs.

DISPOSITION

The judgment is reversed. The parties shall bear their own costs of this appeal.

Scotland, J., and Puglia, J.,* concurred.

---

claim that Watson was potentially liable to Huffman because of the breach of Caltrans's duty to maintain the intersection in a safe condition.

[8]The duty to indemnify for the expenditure of attorney's fees arises out of a duty to provide complete indemnity which *includes* the duty to provide a defense to another. In such a case the failure to provide a defense gives rise to a duty to recompense for the costs of the defense, which include attorney's fees. The clearest cases arise where there is a contractual or implied contractual liability to defend, as in cases of insurance.

*Retired Presiding Justice of the Court of Appeal, Third District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.