Eugene BURGER et al, Plaintiffs,

v.

Michael KUIMELIS et al, Defendants.

Michael Kuimelis et al,
Counterclaimants,

v.

Eugene Burger et al,
Counterdefendants.

No. C–02–2309–VRW.

United States District Court,
N.D. California.

June 28, 2004.

Marcus S. Topel, Daniel F. Cook, Topel & Goodman, San Francisco, CA, Daniel B. Beck, Beck Law Offices, Santa Rosa, CA, for Plaintiffs and Cross–Defendants.

Matthew Brian Pavone, Novato, CA, Lawrence Bernheim, Bernheim & Hicks, Santa Rosa, CA, Frank Scott Moore, Law Offices of Frank S. Moore, APC, Debra Spotts Blum, Bernard Gehlhar, Beth A. Fruechtenicht, Wilson Elser Moskowitz Edelman & Dicker LLP, James D. Boughey, Wilson Elsner Moskow et al, Michele M. Betti, Sedgwick, Detert, Moran & Arnold LLP, Gary A. Bresee, Barger & Wolen LLP, Cheryl Dyer Berg, Jennifer A. Bunshoft, Paul E.B. Glad, Sonnenschein Nath & Rosendthal, Mary McNamara, Swanson & McNamara LLP, San Francisco, CA, for Defendants and Cross–Claimants.

## ORDER

WALKER, District Judge.

### I

The basic facts of this case are simple, although disputed. Counterdefendants

were involved in purchasing insurance and insurance brokerage services from counterclaimants on behalf of a number of projects. Counterdefendants claim that they were secretly overcharged. Counterclaimants have a different story, namely that counterdefendants agreed to the extra charges and that counterdefendants used the extra charges to defraud HUD and the project owners.

As noted on a number of occasions, from these simple facts has grown a briar patch of litigation. Recently, the court considered a number of motions related to the fifth amended complaint. In this order, the court considers the motions filed by counterdefendants against the fifth amended counterclaim ("FACC"). FACC (Doc # 229, Exh 1).

Counterclaimants plead the following twelve causes of action in the FACC:

1. Violation of section 1962(c) of the Racketeer Influenced and Corrupt Organizations ("RICO") Act against all counterdefendants.

2. Violation of RICO § 1962(d) for conspiracy to violate RICO § 1962(c) against all counterdefendants.

3. Violation of RICO § 1962(d) for conspiracy to violate RICO § 1962(a) against all counterdefendants.

4. Breach of contract against Eugene Burger Management Corporation, California; Eugene Burger Management Corporation, Nevada; and Eugene Burger Management Corporation, Texas (collectively, "EBMC"), as well as Eugene Burger.

5. Fraud against Burger and EBMC.

6. Unfair trade practices under Cal Bus & Prof Code § 17000 against Burger and EBMC.

7. Unfair competition under Cal Bus & Prof Code § 17200 against Burger and EBMC.

8. Negligence against Burger and EBMC.

9. Declaratory relief and equitable indemnity against all counterdefendants.

10. Implied contractual indemnity against Burger and EBMC.

11. Money had and received against Burger and EBMC.

12. Accounting against all counterdefendants.

Counterdefendants filed three separate motions against the FACC. The first motion is directed to claims one through three and five, the second motion is directed to claims four and six through twelve and the third motion is directed to the FACC as a whole. See Doc.##238, 239 & 244. As noted by Kuimelis, counterdefendants' strategy of dividing its arguments in three motions appears to be an attempt to evade the Civil Local Rules.

Under Civ LR 7–2(b), motions are to consist of "one filed document not to exceed 25 pages in length." Counterdefendants filed three separate "motions" within one day of each other instead of "one filed document" as required by the Civil Local Rules. Although none of the documents exceeds twenty-five pages individually, counterdefendants' three motions added together total fifty-eight pages, a sum more than double the allowed page limit. Indeed, counterdefendants grouped their arguments against the first through third and fifth claims in one motion and their arguments against the fourth and sixth through twelfth claims in another motion. This odd grouping suggests the intent to evade the Civil Local Rules.

■ This type of rule-bending motion practice is unacceptable. The court regularly grants parties' requests to file an over-sized memorandum under Civ LR 7–4 and 7–10. But parties are not permitted

unilaterally to impose on the nonmoving parties and the court the burden of sifting through excessively long moving papers. The page limit forces moving parties to focus their discussion on the most important issues. In this case, counterdefendants could have substantially focused their arguments; indeed, counterdefendants were required to withdraw arguments in their reply because counterdefendants had not sufficiently researched the law underlying their arguments before filing their motions.

The court declines, at this time, to refuse to consider counterdefendants' motions or otherwise impose sanctions, but counterdefendants are cautioned not to engage in these types of practices again.

## II

### A

#### 1

The court first considers counterdefendants' motions directed to the FACC as a whole.

Counterdefendants move the court to dismiss the FACC pursuant to the court's authority under FRCP 11 to dismiss a pleading as " 'false and sham.' " See *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1324 (Fed.Cir.1998) (quoting *Ellingson v. Burlington Northern, Inc.,* 653 F.2d 1327, 1329 (9th Cir.1981)); Counterdefendants Mot (Doc # 244). Rule 11 prohibits, *inter alia,* allegations that are not "likely to have evidentiary support." Examples of cases in which pleadings were dismissed as false and sham include *Ellingson* and *Bradley.* In *Ellingson,* the Ninth Circuit affirmed the dismissal of a pleading because the "[e]ssential allegations of the complaint were false." 653 F.2d at 1329–30. In *Bradley,* the Federal Circuit affirmed the dismissal of an amended pleading that so contradicted the original pleading it was "a transparent attempt to conform the facts to the requirements of the cause of action." *Id.* at 1324.

Both parties request judicial notice of a number of documents related to the motion to dismiss a pleading as a sham. See Doc.##243, 260. The court may examine evidence outside the pleadings in considering a motion to dismiss a pleading as a sham. *Ellingson,* 653 F.2d at 1329–30. Accordingly, it appears unnecessary to take judicial notice of the documents; rather, the court may consider the documents as it considers evidence submitted in support of a motion for summary judgment.

#### 2

Counterdefendants argue that the allegations in the FACC so contradict previous allegations and statements made by Kuimelis that the FACC should be dismissed in its entirety. Counterdefendants cite allegations related to (1) the repayment of a debt and (2) the location at which oral contracts were made.

##### a

In the FACC, counterclaimants allege that the parties entered into a service fee agreement beginning in 1991. FACC (Doc # 229, Exh 1) at ¶ 51. The service fees included payment for work performed by Kuimelis "beyond the transacting of insurance," as well as payments on a debt owed by counterdefendants to counterclaimants. Id. In early 1995, having lost track of the amount due under the debt, the parties discontinued service fees as payment on the debt but continued the service fees as payment for extra, non-transactional work. Id at ¶ 59.

On a number of occasions while describing the basis for the alleged service fees, Kuimelis failed to mention that the service fees were used to make payments on a debt. Such occasions include prior complaints and prior testimony in Burger's

criminal trial. See, e.g., Cross-complaint (Doc # 240, Exh 1) at ¶ 12; Kuimelis Testimony, Feb 15, 2001, *United States v. Burger*, CR 99–0439 SI (Doc # 248, Exh 8) at 23:13–22. Additionally, during an interview with the FBI, Kuimelis stated that, in 1994, Kuimelis "agreed to release him [Burger] from the debt because the Burger account was a large account for him." FBI 302 Interview, Michael Kuimelis, Feb 22, 2000 (Doc # 248, Exh 9) at 2.

Counterdefendants contend that Kuimelis' statement to the FBI directly contradicts the allegations in the FACC. The court, however, sees no material difference between the facts alleged in the complaint and the statement made to the FBI. In the FACC, counterclaimants allege:

> In or about early 1995, EBMC, by and through Eugene Burger, proposed that rather than resolving the specific question of how much principal and interest remained due on the $322,309 debt owed by EBMC to MBK, the parties agree [sic] that MBK would continue to charge service fees, in addition to insurance premiums, and that a percentage of the service fees would be held by MBK for the benefit of Burger and dispersed to EBMC at Burger's direction.

FACC (Doc # 229, Exh 1) at ¶ 59.

The general statements in the FACC describing the discontinuance of service fees as debt repayments are nearly identical to the general reference in the FBI statement to a "release" from the debt. Nor is the difference between "early 1995" as stated in the FACC and "1994" as stated in the FBI statement material.

Counterdefendants contend, in the alternative, that Kuimelis suggested by negative implication that the service fees included only non-transactional services. In *Bradley*, the plaintiff alleged in the original complaint that he had not talked with his attorney about an agreement. After the complaint was dismissed without prejudice, the plaintiff alleged that he relied on his attorney's advice in relation to the agreement. The *Bradley* court, therefore, relied on a direct contradiction between the pleadings in dismissing the complaint as a sham.

In this case, counterdefendants ask the court to conclude, as a matter of law, that Kuimelis implied that the service fees were limited to fees for services beyond the transacting of insurance. The weak inference counterdefendants advance, however, is simply not enough to dismiss a pleading as a sham under FRCP 11.

b

The court now turns to counterdefendants' second argument in support of the motion to dismiss the FACC as a sham pleading. In the FACC, counterclaimants allege that the oral contracts underlying the service fee arrangement were made in Mill Valley and San Francisco. FACC (Doc # 229, Exh 1) at ¶ 104. In some prior versions of the counterclaim, counterclaimants alleged that the oral contracts were made in Santa Rosa. See, e.g., Cross–Complaint (Doc # 240, Exh 1) at ¶ 37. Counterdefendants argue that these locations are so different in the FACC from previous versions of the counterclaim that the FACC should be dismissed in its entirety.

Counterclaimants concede that the allegations regarding the locations of the oral contracts have been inaccurate. Indeed, counterclaimants request leave to amend to correct the allegations in the FACC. Counterclaimants explain that they mistakenly pled MBK's principal place of business as Santa Rosa at all relevant times. Prior to 1998, however, MBK's principal place of business was Mill Valley. Accordingly, counterclaimants request leave to amend the counterclaim to allege that the oral contracts occurred in Mill Valley and Santa Rosa, the principal places of busi-

ness of MBK during the relevant time period.

Counterdefendants' contention that this minor difference in location condemns the entire counterclaim as a sham pleading is baseless. This type of pleading error should be avoided, if possible. But it does not demonstrate the absence of evidentiary support necessary to sustain a dismissal under FRCP 11.

#### c

Accordingly, counterdefendants' motion to dismiss the FACC as a false and sham pleading (Doc # 244) is DENIED.

#### B

Counterdefendants move to dismiss MBK as a counterclaimant because Kuimelis and MBK are not legally separate entities. Counterdefendants Mot (Doc # 239) at 1–2.

■ Under FRCP 17(b), the capacity of MBK to sue or be sued is determined with reference to California law. In California, a sole proprietorship is not legally separate from its owner. See *Providence Washington Ins. Co. v. Valley Forge Ins. Co.*, 42 Cal.App.4th 1194, 1199–1200, 50 Cal.Rptr.2d 192 (1996); see also *Pinkerton's, Inc. v. Superior Ct.*, 49 Cal.App.4th 1342, 1348, 57 Cal.Rptr.2d 356 (1996) ("Use of a fictitious business name does not create a separate legal entity."). MBK, therefore, lacks the capacity to sue separately from Kuimelis.

Accordingly, the court DISMISSES MBK as a separate counterclaimant in the FACC. This leaves Kuimelis as the sole remaining counterclaimant. If he so chooses, Kuimelis may amend the FACC to indicate in the caption of the complaint that he does business as MBK: "MICHAEL KUIMELIS dba MBK INSURANCE SERVICES."

Kuimelis contends that if the court concludes that Kuimelis and MBK are not legally separate entities, the court should also dismiss MBK as a defendant in the complaint. At this time, the court declines to dismiss MBK as a separate defendant because the legal status of MBK as a defendant is not before the court on the current motions to dismiss the FACC. But the court agrees that the same analysis would apply.

#### C

■ In the FACC, Kuimelis inconsistently identifies this entity by two names, "Friandes Group, Inc" and "Friandes Corporation." See, e.g., FACC (Doc # 229, Exh 1) at ¶¶ 1, 58 & 64 (identified by proper name); id at caption & ¶¶ 10, 27, 31, 120 & 122 (identified by incorrect name). Counterdefendants move for dismissal of any claims brought against "Friandes Corporation, Inc" because the proper business name of this entity is "Friandes Group, Inc." Counterdefendants Mot (Doc # 239) at 2.

Kuimelis requests leave to amend the FACC to plead correctly the name of this entity. Counterdefendants argue that "Kuimelis has now had six opportunities to file a pleading naming Friandes Group, Inc. by its correct name, and this Court is under no obligation to give him a seventh. All claims as to Friandes Group, Inc. should be dismissed." Doc # 279 at 3. The court rejects this overreaching argument. This type of error does not suffice to dismiss all claims against a particular counterdefendant.

Accordingly, the court GRANTS Kuimelis leave to amend to plead the correct name of the Friandes Group.

#### III

The court now turns to the motions to dismiss filed against specific causes of action.

## A

Under FRCP 12(b)(6), dismissal is proper if the complaint fails "to state a claim upon which relief can be granted." The court must accept the factual allegations as true and construe them in the light most favorable to the plaintiff. *Broam v. Bogan,* 320 F.3d 1023, 1028 (9th Cir.2003). Although a plaintiff is not held to a "heightened pleading standard," the plaintiff must provide more than mere "conclusory allegations." *Swierkiewicz v. Sorema NA,* 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (rejecting heightened pleading standards); *Schmier v. United States Court of Appeals for the Ninth Circuit,* 279 F.3d 817, 820 (9th Cir.2002) (rejecting conclusory allegations). A motion to dismiss must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir1990). The court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," whether such documents are provided by a plaintiff or a defendant. See *Lapidus v. Hecht,* 232 F.3d 679, 682 (9th Cir.2000) (internal quotation omitted).

■ "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000). The district court has broad discretion, however, to deny leave to amend after the first amendment of the complaint. See *Wagh v. Metris Direct, Inc.,* 348 F.3d 1102, 1111 (9th Cir.2003).

## B

### 1

Counterdefendants move to dismiss the RICO claims, which constitute the first through third causes of action. A plaintiff has a private right of action under RICO for injuries to "his business or property by reason of a violation of section 1962 of this chapter." 18 USC § 1964(c). "Section 1962, in turn, lists four separate acts which form the basis for RICO liability": "(a) to invest income derived from a pattern of racketeering activity in an enterprise; (b) to acquire or maintain an interest in an enterprise through a pattern of racketeering activity; (c) to conduct the affairs of an enterprise through a pattern of racketeering activity; or (d) to conspire to .commit any of the above acts." *Diaz v. Gates,* 354 F.3d 1169, 1172 (9th Cir.2004) (citing 18 U.S.C. § 1962(a)-(d)).

■ To allege RICO injury, a plaintiff must demonstrate that it suffered a "concrete financial loss." *Id.* A plaintiff must also demonstrate that the injury was proximately caused by RICO predicate acts. See *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). Proximate causation requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 268, 112 S.Ct. 1311. But the injurious conduct need not be the "sole cause" of the injury; instead, the injurious conduct need only be "a substantial factor in the sequence of responsible causation." *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n,* 298 F.3d 768, 773 (9th Cir.2002) (internal quotation omitted).

2

Counterdefendants contend that Kuimelis has not adequately alleged RICO injury. In his first cause of action, Kuimelis alleges only that

"[e]ach of the Counter–Claimants suffered injury to its business or property within the meaning of Title 18, U.S.C. 1964(c) by reason of the violation of Title 18, U.S.C. § 1962(c) committed by the Counter–Claim Defendants".

FACC (Doc # 229, Exh 1) at ¶ 90. The damage allegations in the second and third causes of action are similar.

Kuimelis contends that the RICO injury has been adequately alleged, citing paragraph 124 of the FACC. Counterclaimants Opp (Doc # 258) at 8:4–5. The claimed injuries are "expenses, including attorneys' fees, in the course of defending itself during the federal government investigation into Counter–Defendants' illegal scheme." Id. But paragraph 124 is the damages claim for Kuimelis' fifth cause of action, not the RICO causes of action. Counterdefendants are not obligated to search through Kuimelis' counterclaim to guess which the damages claimed under the RICO causes of action.

The court agrees that the present pleading does not adequately describe the damages sought by Kuimelis. Although RICO damage allegations are not held to a heightened pleading standard, the conclusory allegations in the FACC do not suffice to withstand a motion to dismiss under FRCP 12(b)(6).

Accordingly, the court DISMISSES the RICO causes of action for failure adequately to plead damages. The court turns to counterdefendants' additional arguments to determine whether dismissal should be with or without prejudice.

■ First, counterdefendants concede that a plaintiff may recover its legal expenses in prosecuting a RICO cause of action but argue that legal expenses incurred in other proceedings as a result of a RICO defendant's wrongful conduct ("prior legal expenses") cannot be recovered. Although no controlling Ninth Circuit precedent appears to exist, other circuits have held that prior legal expenses are cognizable under RICO. See, e.g., *Handeen v. Lemaire*, 112 F.3d 1339, 1354 (8th Cir.1997) (holding that prior legal expense "qualifies as an injury to business or property that was proximately caused by a predicate act of racketeering"); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1166–67 (2d Cir.1993) ("[L]egal fees may constitute RICO damages when they are proximately caused by a RICO violation."). The court finds the reasoning of these cases persuasive. Legal expenses are concrete financial losses, "not mere injury to a valuable intangible property interest" and are thus recoverable under RICO. See *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086–87 (9th Cir.2002).

Counterdefendants rely primarily on *Religious Technology Center v. Gerbode* ("*RTC*"), 1994 WL 228607 (C.D.Cal.1994), in arguing that prior legal expenses can never be recovered as RICO damages. But *RTC* holds merely that, under the facts of that case, the plaintiffs' attorney fees were not proximately caused by the defendant's alleged misconduct. Thus, *RTC* does not support the broad proposition that attorney fees can never be recovered as RICO damages.

■ Second, counterdefendants contend that the alleged RICO conduct did not proximately cause the legal expenses incurred by Kuimelis. To determine whether a defendant's conduct has proximately caused an injury, the court applies the following three-factor test:

(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the

law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries.

See *Ass'n of Washington Public Hospital Districts v. Philip Morris, Inc.*, 241 F.3d 696, 701 (9th Cir.2001) (internal quotation omitted).

■■■ Under the first factor, the court considers whether other entities, such as HUD or the projects, "are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general." Id. HUD was a direct victim of the RICO predicate acts allegedly committed by counterdefendants. Further, HUD could be counted on for enforcement of the law. Indeed, it appears that criminal proceedings were brought against Burger as a result of a HUD investigation. That HUD was a direct victim, however, does not foreclose a conclusion that Kuimelis was also a direct victim. See *Commercial Cleaning Servs., LLC v. Colin Service Systems, Inc.*, 271 F.3d 374, 383–84 (2d Cir.2001). Accordingly, the court turns to the remaining two factors to determine whether Kuimelis was also a direct victim.

Under the second factor, the court focuses on the alleged conduct to determine whether it proximately caused the injury. Specifically, the court considers "whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct." *Ass'n of Washington Public Hospital Districts*, 241 F.3d at 701. Other formulations of the second factor include whether the defendant's conduct was a "substantial factor" in the injury's occurrence or whether a defendant's actions are "tied to or directed at his business or property." *Oki Semicon-*

*ductor Co.*, 298 F.3d at 773 (first quotation); *Diaz*, 354 F.3d at 1172 (second quotation).

Under Kuimelis' version of the facts, Kuimelis was an unwitting tool in counterdefendants' criminal scheme to defraud HUD and the project owners. Further, Kuimelis claims that counterdefendants knew they were placing Kuimelis at risk of a HUD investigation. Taking these allegations to be true, counterdefendants' actions would possibly be a proximate cause of Kuimelis' injuries. The injuries were a foreseeable outcome of the misconduct and were solely the result of counterdefendants' actions.

Counterdefendants argue that Kuimelis cannot recover because the alleged RICO predicate acts were directed at HUD, not Kuimelis. Counterdefendants rely substantially on *Aramony v. United Way of America*, 969 F.Supp. 226 (S.D.N.Y.1997). In a widely publicized trial, Aramony was convicted on a variety of criminal charges for misappropriating funds while employed at the United Way of America ("UWA"). Aramony brought suit against UWA to recover benefits after he was fired and UWA counterclaimed, alleging injuries including reputational damage and lost charitable contributions. The *Aramony* court held that the "public's unintended response" was not the proximate cause of UWA's reputational damage and lost charitable contributions. The court concluded, instead, that the public backlash against UWA was due to "the public's mistrust of UWA's remaining management and the poor oversight record of UWA's board." *Id.* at 233. Thus, the holding of *Aramony* is merely that the injuries alleged by UWA could not be separated from its own misconduct and, therefore, that Aramony's misconduct did not proximately cause UWA's injuries.

In this case, the FACC alleges that counterdefendants used Kuimelis' services in defrauding HUD and the projects. In one sense, Kuimelis was not the direct object of the alleged RICO predicate acts because Kuimelis was merely an unwitting tool to defraud others. By entangling Kuimelis in their RICO scheme, counterdefendants tied Kuimelis and thus his business and property to the RICO scheme in such a way that harm to Kuimelis was foreseeable. Unlike *Aramony*, the injuries suffered by an innocent, unwitting tool are not based in any part on the tool's own misconduct. Accordingly, the court concludes that an unwitting tool may recover under RICO.

The court notes, however, that counterdefendants provide evidence in the motion to dismiss the FACC as a sham that Kuimelis pled guilty to criminal contempt for actions related to the Burger criminal trial. Plea Agreement (Doc # 248, Exh 6) at ¶ 2. Although this fact is not alleged in the FACC, and thus the court may not consider it on the present motion to dismiss, the court notes that such a fact might change the court's analysis. Attorney fees Kuimelis incurred in defending himself during the criminal contempt proceedings are not damages proximately caused by counterdefendants' alleged misconduct. Accordingly, it may be difficult, if not impossible, to distinguish factually the amount of damages Kuimelis incurred as a result of counterdefendants' alleged misconduct as compared to Kuimelis' own misconduct.

Under the third factor, the court focuses on the injury to determine whether it was proximately caused by the wrongful conduct. Specifically, the court considers whether the injuries suffered by HUD, the projects and Kuimelis are so connected that awarding Kuimelis damages would require complicated analyses to avoid the "risk of multiple recoveries." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), is a good example of a case presenting a risk of multiple recoveries. In *Holmes*, the defendants' securities fraud contributed to the bankruptcy of two stockbrokers. The bankruptcy prevented the stockbrokers from meeting their obligations to their clients. The failure of the stockbrokers to meet their obligations to their clients triggered the duty of the Securities Investor Protection Corporation ("SIPC") to reimburse the clients. Thus, injury traveled from the stockbrokers to the clients to the SIPC. The Supreme Court concluded that only the stockbrokers were directly injured by the defendants' conduct, reasoning that a court would be faced with a significant risk of multiple recoveries if claims could be brought by the stockbrokers, the clients and the SIPC.

In this case, there is no risk of multiple recoveries. Kuimelis seeks damages covering only the legal expenses he incurred during the HUD investigation and Burger criminal trial. Such damages could not duplicate any damages sought by HUD or by the projects. As noted above, it might be difficult to determine what damages are attributable to counterdefendants' alleged misconduct, but such is a matter better considered later.

3

Counterdefendants raise two more arguments. First, counterdefendants claim that the Friandes Group cannot be both an enterprise and a defendant and, therefore, that the third cause of action must be dismissed. In *United Energy Owners Comm. v. United States Energy Mgmt. Sys.*, 837 F.2d 356, 364 (9th Cir. 1988), the Ninth Circuit stated that an entity could be both an enterprise and a person for purposes of sections 1962(a) and (d). Because the third cause of action alleges a claim under 1962(d) for conspir-

ing to violate section 1962(a) counterdefendants' first argument fails.

Second, counterdefendants argue that Kuimelis has not alleged a substantive violation of section 1962(a) and, therefore, cannot state a section 1962(d) claim based on a conspiracy to violate section 1962(a). Counterdefendants provide little detail to this argument and cite no passages from the complaint. On the other hand, Kuimelis fails even to mention this argument. Having no desire to sift through the FACC to make arguments on behalf of both sides, the court suggests that Kuimelis add some clarity to the allegations underlying his 1962(a) claim in any amendments to the counterclaim resulting from this order.

4

Accordingly, the court DISMISSES without prejudice the first through third causes of action.

IV

Counterdefendants move the court to dismiss the fourth cause of action, the breach of contract claim. Counterdefendants Mot (Doc # 239) at 3–6. Counterdefendants make three arguments: first, that no recoverable damages have been pled; second, that the allegedly breached duties run to third parties, not to Kuimelis; and third, that the contract is illegal and thus cannot be enforced. For simplicity, the court continues to use the term "counterdefendants" even though the breach of contract cause of action does not apply to the Friandes Group.

A

Counterdefendants first contend that the breach of contract claim should be dismissed because only attorney fees are claimed as damages. Kuimelis prays for general damages of "all monetary losses and expenses" for the breach of contract claim. FACC (Doc # 229, Exh 1) at Prayer, ¶ 2. Kuimelis also describes the dam-

ages claims in more detail in paragraph 107 of the FACC. Id at ¶ 107. Paragraph 107 provides that counterdefendants' actions led "to investigations by HUD and others which would, in the normal course of business, cause substantial expense to MBK for record retrieval, response to inquiries, accountings and legal expenses, thereby diminishing and otherwise depriving MBK of the benefits of its contract with Burger/EBMC." Id.

Kuimelis claims that "[n]owhere is it mentioned that MBK seeks attorneys' fees as damages for the breach of contract claim." Counterclaimants Opp (Doc # 256) at 16:7–8. As quoted above, however, paragraph 107 lists "legal expenses" as one of the expenses resulting from counterdefendants' alleged misconduct. In any event, Kuimelis does not claim attorney fees in the prayer and the court has already held that attorney fees will not be awarded under any breach of contract claim. See Order (Doc # 69) at 13–15.

On the other hand, counterdefendants' argument that Kuimelis claims only attorney fees as damages is not well supported. In paragraph 107, Kuimelis claims a number of expenses, including "record retrieval, response to inquiries, accountings and legal expenses." Counterdefendants have provided no reason to classify the claims made by Kuimelis for expenses such as record retrieval as attorney fees. Nor have counterdefendants provided an argument that the claims are otherwise not cognizable. Accordingly, this argument fails to provide a reason to dismiss the breach of contract cause of action.

B

Counterdefendants also contend that the contractual duties alleged by Kuimelis run from counterdefendants to third parties not to Kuimelis. Counterdefendants Reply (Doc # 279) at 6. This argument is

unpersuasive on the facts of this case. Kuimelis claims that the implied covenant of good faith and fair dealing created two duties: (1) a "duty to disclose the existence of a service fee charged for the services rendered as hereinabove described and the split service fees Burger/EBMC received to the Owner" of the projects and (2) a "duty to refrain from misusing the services of MBK to mislead the federal government or provoke costly investigations." FACC (Doc # 229, Exh 1) at ¶ 113.

Although these two duties could perhaps have been better stated, Kuimelis' essential claim is that counterdefendants were under an implied duty to Kuimelis not to use the services provided by Kuimelis to defraud either the projects or the government. Whether such a duty is imposed by the implied covenant has yet to be determined but Kuimelis has adequately alleged that such a duty runs from counterdefendants to Kuimelis.

C

1

 Counterdefendants finally contend that the alleged agreement between Kuimelis and counterdefendants is illegal and thus void. Agreements must have a lawful objective when made. See Cal Civ Code §§ 1550, 1596. Generally, courts will not enforce an agreement whose sole object is unlawful. Cal Civ Code §§ 1598; *Tiedje v. Aluminum Taper Milling Co. Inc*, 46 Cal.2d 450, 453–54, 296 P.2d 554 (1956) ("A contract made contrary to public policy or against the express mandate of a statute may not serve as the foundation of any action, either in law or in equity."); see Cal Civ Code § 1667 (defining unlawfulness). An agreement may be held unenforceable "whether the evidence of the illegality is produced by plaintiff or by defendant." *Wells v. Comstock*, 46 Cal.2d 528, 532, 297 P.2d 961 (1956). This rule is based on general equitable princi-

ples in seeking "to prevent the guilty party from reaping the benefit of his wrongful conduct" and "to protect the public from the future consequences of an illegal contract." *Tri–Q, Inc. v. Sta–Hi Corp.*, 63 Cal.2d 199, 218, 45 Cal.Rptr. 878, 404 P.2d 486 (1965).

 The general rule that the court will not enforce an illegal agreement is subject to a number of presumptions and exceptions, only one of which the court describes here. "[I]f a contract can be performed legally, a court will presume that the parties intended a lawful mode of performance." *Redke v. Silvertrust*, 6 Cal.3d 94, 102, 98 Cal.Rptr. 293, 490 P.2d 805 (1971). This presumption may be overcome by demonstrating that the party seeking to enforce the contract intended an illegal mode of performance. *Id.* at 103–04, 98 Cal.Rptr. 293, 490 P.2d 805; *Tri–Q*, 63 Cal.2d at 219, 45 Cal.Rptr. 878, 404 P.2d 486; *Tiedje*, 46 Cal.2d at 454, 296 P.2d 554 (holding that an agreement may be enforced if the party seeking to enforce the agreement was "justifiably ignorant" of the facts that make the agreement illegal).

2

To prevail on the illegality argument, counterdefendants must demonstrate either that the agreement could not have been performed lawfully or that Kuimelis intended to act unlawfully in performing the agreement. The FACC expressly alleges, and the court must consider as true on a motion to dismiss, that Kuimelis did not intend to act unlawfully in performing the agreement and that he did not know counterdefendants intended to act unlawfully. FACC (Doc # 229, Exh 1) at ¶ 63. Accordingly, counterdefendants must demonstrate that the agreement could not have been performed lawfully to prevail on their motion to dismiss.

■ Under the agreement, Kuimelis billed EBMC for insurance and service fees. See FACC (Doc # 229, Exh 1) at ¶¶ 59–71, Kuimelis was expressly directed not to itemize insurance premiums from the service fees on the bill to EBMC. Id at ¶ 109. EBMC paid the non-itemized, total bill. Kuimelis hold one-third to one-half of the service fees on behalf of EBMC. From time to time, Kuimelis dispersed these funds at Burger's request to the Friandes Group, a company owned by Burger's wife.

Kuimelis contends that the agreement could be performed legally. The agreement did not explicitly require counterdefendants fraudulently to overbill HUD because counterdefendants could have properly invoiced HUD based on the information in their possession. Further, counterdefendants could have informed the project owners of the service fee arrangement.

Although the court is not overwhelmed by the strength of Kuimelis' argument, counterdefendants have failed to demonstrate that the agreements could not have been performed legally. Counterdefendants do not cite a single statute or case providing the elements of an offense making such the agreement at issue in this case unlawful. Accordingly, the court is unwilling to conclude as a matter of law on the present record that the agreement could not have been performed legally.

The court agrees with counterdefendants, however, that the agreement has a scent of illegality. The apparent structure of the agreement is an illegal kick-back to Burger. Further, even if the agreement could somehow have been performed legally, the trier of fact could determine that the parties had unlawful intentions in entering into such a contract. Kuimelis' lawful intentions in entering into this agreement are presumed at the present but an agreement with this aroma of illegality would provide a trier of fact with substantial circumstantial evidence of illegal intent.

■ Moreover, if it is demonstrated that Kuimelis and counterdefendants entered into an agreement with unlawful intentions, the court may bar some or all claims by both sides under the doctrine of unclean hands. The unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instr Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). "In California, the unclean hands doctrine applies not only to equitable claims, but also to legal ones." *Adler v. Nigeria*, 219 F.3d 869, 877 (9th Cir.2000).

### D

Accordingly, the court DENIES counterdefendants' motion to dismiss the fourth cause of action for breach.

### V

### A

■ The court now turns to counterdefendants' motion to dismiss the fifth cause of action, the fraud claim. Kuimelis alleges that "EBMC directed Counter–Claimants not to itemize said premiums and periodic payments, but, for each project, to combine all charges for property, general liability, umbrella liability, service fees and finance charges under single invoices." FACC (Doc # 229, Exh 1) at ¶ 117. Counterdefendants represented that this "arrangement was for sound business reasons internal to EBMC and its operations." Id at ¶ 120. Kuimelis contends that this representation was false because counterdefendants intended to use the non-itemization arrangement in a plan to defraud

HUD and the projects. Kuimelis limits his damages claim to attorney fees and expenses under the "tort of another" doctrine.

The parties disagree whether Cal Code Civ Pro § 1021.6 governs a claim for attorney fees and expenses under the tort of another doctrine. Counterdefendants contends that section 1021.6 applies and bars Kuimelis' fraud claim because he did not meet its notice and demand requirements. The dissensus in the case law makes deciding this question difficult.

Two lines of cases have developed after the enactment of section 1021.6. Some cases hold that section 1021.6 governs all claims for attorney fees and expenses under the tort of another doctrine. See *Unocal Corp. v. United States*, 222 F.3d 528, 543 (9th Cir.2000) (stating, in dictum, that the tort of another doctrine is "codified at California Code of Civil Procedure section 1021.6"); *John Hancock Mutual Life Ins Co. v. Setser* ("*John Hancock*"), 42 Cal. App.4th 1524, 1531–35, 50 Cal.Rptr.2d 413 (1996) (holding that section 1021.6 governs claims under the tort of another doctrine); *Bear Creek Planning Committee v. Title Insurance and Trust Co.*, 164 Cal.App.3d 1227, 1244, 211 Cal.Rptr. 172 (1985) (same), disapproved on other grounds by *Bay Development, Ltd. v. Superior Court*, 50 Cal.3d 1012, 269 Cal.Rptr. 720, 791 P.2d 290 (1990).

Other cases, perhaps the majority, simply ignore the enactment of section 1021.6 in discussing the tort of another doctrine. These cases simply apply the common law tort of another doctrine, holding that attorney fees may be recovered only as an element of tort damages. See, e.g., *Sooy v. Peter*, 220 Cal.App.3d 1305, 1310, 270 Cal.Rptr. 151 (1990).

The parties provide little help in determining which line of cases should be adopted by the court. Counterdefendants acknowledge that only some courts hold

that section 1021.6 codifies the common law tort of another doctrine. Counterdefendants, however, provide no reason to adopt that line of cases. Kuimelis fails even to acknowledge that some cases hold that section 1021.6 codifies the common law tort of another doctrine.

Before the court can determine which line of cases to adopt, the differences between the common law tort of another doctrine and section 1021.6 must be set out. The seminal California case establishing the tort of another doctrine is *Prentice v. North American Title Guaranty Corp.*, 59 Cal.2d 618, 30 Cal.Rptr. 821, 381 P.2d 645 (1963), in which the California Supreme Court held:

> A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred.

*Id.* at 620, 30 Cal.Rptr. 821, 381 P.2d 645. A claim under the tort of another doctrine thus involves three persons: the claimant, the tortfeasor and the third party. Although the above-quoted language is ambiguous whether the "tort" in the tort of another doctrine is a tort committed by the tortfeasor against the claimant or against the third party, the theory underlying the award of attorney fees demonstrates that the tortfeasor must have committed a tort against the claimant. In *Prentice*, the plaintiffs sued an escrow holder who negligently closed a real estate transaction. The plaintiffs sought to recover attorney fees incurred in a quiet title action against third parties resulting from the escrow holder's negligence. The *Prentice* court concluded that the attorney fees were recoverable as "*damages* wrongfully caused by defendant's improper actions."

*Id.* at 621, 30 Cal.Rptr. 821, 381 P.2d 645 (emphasis added). Because attorney fees and expenses are awarded as damages in a tort cause of action, the tortfeasor must have committed a tort against the claimant. See also *Sooy,* 220 Cal.App.3d at 1310, 270 Cal.Rptr. 151 (allowing recovery of attorney fees as "an element of tort damages" only in cases "involv[ing] a clear violation of a traditional tort duty between the tortfeasor" and the claimant).

Under section 1021.6, a court may award attorney fees incurred in third party litigation if the claimant meets four requirements: (1) the indemnitee must have "prevail[ed] on a claim for implied indemnity;" (2) a tort must have been committed by the indemnitor that involved the indemnitee in third party litigation; (3) the indemnitor must have been "notified of the demand to bring the action or provide the defense" during the third party litigation and refused to do so; and (4) the indemnitee must prevail entirely in the "principal case." Cal Code Civ Pro § 1021.6.

There appear to be three potential differences between the common law tort of another doctrine and section 1021.6. First, section 1021.6 applies only in implied indemnity cases. Second, the common law doctrine does not have a notice and demand requirement. Third, under the common law doctrine, the trier of fact determines whether to award attorney fees and expenses as a matter of damages, whereas under section 1021.6, the court determines whether to award attorney fees. Cf *Brandt v. Superior Court,* 37 Cal.3d 813, 819, 210 Cal.Rptr. 211, 693 P.2d 796 (1985) (noting that the award of attorney fees as damages should be made by the trier of fact unless otherwise stipulated).

Of the cases holding that section 1021.6 codifies the common law tort of another doctrine, *John Hancock* describes the reasoning most clearly. The *John Hancock* court determined that section 1021.6 codi-

fied the tort of another doctrine because section 1021.6 was enacted to overrule the California Supreme Court's decision in *Davis v. Air Technical Indus., Inc.,* 22 Cal.3d 1, 148 Cal.Rptr. 419, 582 P.2d 1010 (1978).

*Davis* involved an implied indemnity theory. Indemnity can be implied if the indemnitee is found liable to a third person in a situation in which " '[t]he indemnitor supplied a defective chattel * * * and the indemnitee innocently or negligently failed to discover the defect.' " *Watson v. Dept. of Transportation,* 68 Cal.App.4th 885, 891, 80 Cal.Rptr.2d 594 n3 (1998) (quoting Restatement 2d of Torts § 886B). In *Davis,* a retailer and manufacturer were sued for damages caused by a defective elevator. The plaintiff recovered on a theory of strict liability against both the retailer and the manufacturer. The retailer was found not negligent in failing to discover the defect. Accordingly, the retailer was entitled to indemnification from the manufacturer.

The *Davis* court considered whether the indemnitee was entitled to recover attorney fees as well as damages on the indemnity claim. The majority concluded that the indemnitee did not have a right to recover attorney fees expended "exclusively in defense of alleged wrongdoing on its part." *Davis,* 22 Cal.3d at 6, 148 Cal.Rptr. 419, 582 P.2d 1010. The majority rejected an argument based on the tort of another doctrine from *Prentice,* concluding that the *Prentice* exception applies only in "exceptional circumstances." *Id.* at 7, 148 Cal. Rptr. 419, 582 P.2d 1010. The "exceptional circumstances" doctrine advanced by the majority was later narrowed substantially in *Gray v. Don Miller & Assocs., Inc.,* 35 Cal.3d 498, 507–09, 198 Cal.Rptr. 551, 674 P.2d 253 (1984).

Justice Mosk dissented. He claimed that the retailer should be entitled to at-

torney fees as part of the indemnification award. He argued that the retailer "did not gratuitously undertake a defense and incur obligations for attorney's fees." Id. at 9, 198 Cal.Rptr. 551, 674 P.2d 253. Rather, "it was known or should have been known by the defendants at all times, Air Technical [the manufacturer] was alone responsible for the accident and thus it should have undertaken the entire defense." Id. Justice Mosk also argued, quoting from Prentice, that the retailer should have been able to recover attorney fees under the tort of another doctrine.

The California legislature enacted Cal Code Civ Pro § 1021.6 in response to the majority's decision in Davis. Most courts, including John Hancock, have described the enactment of section 1021.6 as an attempt expressly to overrule the majority's decision in Davis by adopting Justice Mosk's analysis. See, e.g., Fidelity Mortgage Trustee Service, Inc. v. Ridgegate East Homeowners Ass'n, 27 Cal.App.4th 503, 513–14, 32 Cal.Rptr.2d 521 (1994).

The John Hancock court reasoned that section 1021.6 codified the tort of another doctrine because courts apply the " 'tort of another' doctrine as just another form of 'implied indemnity.'" John Hancock, 42 Cal.App.4th at 1533, 50 Cal.Rptr.2d 413. But this reasoning gets Justice Mosks' analysis backwards. For the tort of another doctrine to apply to all claims of implied indemnity, as Justice Mosk apparently argued, claims of implied indemnity must be a form of tort of another claims, not the other way around. Accordingly, because section 1021.6 is limited to claims of "implied indemnity," it could not have codified each possible application of the tort of another doctrine.

Although the court need not decide in this case whether implied indemnity claims are just a form of the tort of another doctrine, such an interpretation is not implausible. Under Prentice, "[a] person

who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." Prentice, 59 Cal.2d at 620, 30 Cal.Rptr. 821, 381 P.2d 645. The obligation to indemnify is often described as a tort duty to indemnify thus meeting the "tort of another" requirement. See, e.g., Watson, 68 Cal.App.4th at 894, 80 Cal. Rptr.2d 594 (describing the "traditional tort duty between indemnitee and indemnitor"). Further, the failure of an indemnitor to indemnify the indemnitee causes the indemnitee "to act in the protection of his interests by bringing or defending an action against a third person."

Accordingly, section 1021.6 codifies the tort of another doctrine, if at all, only for claims of implied indemnity. Because Kuimelis' claim under the tort of another doctrine is not a claim for implied indemnity, section 1021.6 is not applicable.

### B

■ Counterdefendants contend that Kuimelis cannot recover under the common law tort of another doctrine even if section 1021.6 does not codify the common law tort of another doctrine. First, counterdefendants contend that the tort of another doctrine does not apply because Kuimelis acted for his own benefit, not for the benefit of others. Counterdefendants' argument fails because it relies on language from Davis that is not related to the majority's tort of another analysis. Furthermore, the argument makes little sense. Under Prentice, "[a] person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person" is entitled to recover attor-

ney fees. 59 Cal.2d at 620, 30 Cal.Rptr. 821, 381 P.2d 645 (emphasis added). Accordingly, a claimant acting for his own benefit is a requirement of, not a bar to, a claim under the tort of another doctrine.

■ Second, counterdefendants argue that Kuimelis failed to identify a tort duty that counterdefendants owed to Kuimelis. Counterdefendants Reply (Doc # 270) at 13. But Kuimelis alleges that counterdefendants fraudulently misled Kuimelis. The duty not to mislead is a duty that runs from counterdefendants to Kuimelis and thus counterdefendants' argument fails.

Finally, counterdefendants claim that no formal legal proceedings were brought against Kuimelis and argue that, therefore, Kuimelis did not bring or defend an "action" as required by *Prentice.* Id at 12. In *Saunders v. Cariss,* 224 Cal.App.3d 905, 274 Cal.Rptr. 186 (1990), the plaintiff was injured in an accident with an uninsured motorist. The plaintiff alleged that his insurance agent negligently failed to obtain the requested insurance. The plaintiff was required, as a result of the agent's negligence, to employ an attorney who succeeded "in convincing" the insurance company to cover the full loss suffered by the plaintiff. The *Saunders* court concluded that the fees paid to the attorney could be awarded under the tort of another doctrine. Although *Saunders* does not explicitly state that no formal legal proceedings were brought, it implies that a claimant need not institute formal legal proceedings to recover under the tort of another doctrine.

Counterdefendants cite to *Unocal Corp. v. United States,* 222 F.3d 528 (9th Cir. 2000), in arguing that formal legal proceedings must be brought to recover under the tort of another doctrine. In *Unocal,* the owner of an oil pipeline sued to recover cleanup costs from an oil spill that occurred when the pipeline ruptured during the construction of a railway station. The

owner sued under the tort of another doctrine to recover attorney fees. The owner argued that its current lawsuit was "akin" to a tort of another scenario because it was like a hypothetical action in which the persons who restored the site sued the owner and then the owner sued the defendants. *Id.* at 543. This argument was easily rejected because real attorney fees do not accrue in hypothetical actions.

In this case, the FACC alleges that Kuimelis was involved in a criminal investigation solely because of counterdefendants' misdeeds. Although no formal legal charge was brought, Kuimelis was required to defend himself in legal proceedings, including a grand jury investigation and Burger's criminal trial. The court deems these facts sufficient to allege an "action" under the tort of another doctrine.

The court notes, however, that Kuimelis is likely to face a significant problem demonstrating proximate causation on his attorney fee claim under the tort of another doctrine, As described in detail above in relation to the RICO claim, attorney fees incurred as a result of Kuimelis' own misconduct resulting in his criminal conviction for contempt may be difficult to disentangle from attorney fees incurred as a result of counterdefendants' alleged misconduct. But the court cannot take these issues up at this stage of the litigation, because the court cannot examine facts outside the record.

The court, therefore, DENIES counterdefendants' motion to dismiss the fifth cause of action for fraud.

## VI

Counterdefendants move the court to dismiss the sixth cause of action, which alleges a violation of the Unfair Practices Act under Cal Bus & Prof Code § 17000.

■ Counterdefendants argue that the claim is barred by the statute of limitations. A section 17000 claim has a three-year statute of limitations. See Order (Doc # 136) at 9. Counterdefendants contend that the cause of action accrued in either July or October of 1999. See FACC (Doc # 229, Exh 1) at ¶ 26. Counterdefendants contend that the claim is time-barred because the section 17000 claim was not added until July 31, 2003, which is more than three years after July and October 1999.

Under *Sidney v. Superior Court,* 198 Cal.App.3d 710, 244 Cal.Rptr. 31 (1988), the commencement of an action by a plaintiff tolls the statute of limitations for any counterclaims that "arise out of the same occurrence" as the allegations of the complaint. *Id.* at 714, 244 Cal.Rptr. 31. The statute of limitations remains tolled throughout the duration of the plaintiff's case. The complaint in this case was filed in October 13, 1999. Compl (Doc # 268, Exh 1). Accordingly, Kuimelis' section 17000 claim is time-barred only if it does not arise out of the same occurrence as the facts alleged by plaintiffs in the complaint.

■ Counterdefendants contend that Kuimelis' section 17000 claim does not arise out of the same occurrence because Kuimelis alleges facts which are in addition to the facts alleged by counterdefendants. See Counterdefendants Reply (Doc # 279) at 7–8. The court disagrees. Counterdefendants/plaintiffs purchased insurance and insurance brokerage services from defendants. Counterdefendants/plaintiffs claim that they were secretly overcharged. Kuimelis alleges a different story, namely that counterdefendants/plaintiffs agreed to the extra charges and that counterdefendants/plaintiffs used the invoices prepared by Kuimelis to defraud HUD and the project owners. That Kuimelis has a different version of the facts, however, does not mean that his claim does not arise out of the same occurrence as the complaint.

Accordingly, the court holds that *Sidney* applies to Kuimelis' sixth cause of action. Because the complaint was filed on October 13, 1999, Kuimelis sixth cause of action is not time-barred. The court, therefore, DENIES counterdefendants' motion to dismiss the sixth cause of action.

## VII

### A

Counterdefendants move to dismiss the seventh cause of action, the unfair competition under Cal Bus & Prof Code ¶ 17200. Counterdefendants contend that the claim is time-barred. The statute of limitations for section 17200 claims is four years. See Cal Bus & Prof Code § 17208; Order (Doc # 136) at 8–9. The section 17200 claim was asserted in the first amended cross-complaint and re-asserted in all subsequent versions, except the fourth amended cross-complaint. Counterdefendants contend that the failure to re-assert the section 17200 claim in the fourth amended cross-complaint constitutes an abandonment of the claim. From this, counterdefendants apparently argue that the claim is time-barred because it was abandoned.

■ Counterdefendants' argument is a bit puzzling. Under *Sidney,* the statute of limitations for a counterclaim is tolled throughout the plaintiff's case. Accordingly, an amendment to the counterclaim is allowed so long as the claim in the amendment arises out of the same occurrence as the facts in the complaint. The court concludes, therefore, for the same reasons the court described in relation to the section 17000 claim, that the section 17200 claim is not time-barred because the section 17200 claim arises out of the same occurrence as the complaint.

 Further, counterdefendants have provided no legal support for the proposition that a party who inadvertently omits a claim from one version of the pleading has abandoned the claim. Rather, leave to amend pleadings "shall be freely given when justice so requires." FRCP 15(a); see FRCP 13(f) ("When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment"). Because the court concludes that the one-time omission of the section 17200 claim was inadvertent, the court concludes that dismissal of the section 17200 claim is not warranted.

### B

Counterdefendants contend, in the alternative, that Kuimelis' claims for injuries dating prior to May 13, 1996, should be barred. To come up with the May 13, 1996, date, counterdefendants subtract four years from the date that the section 17200 claim was first filed. See Counterdefendants Mot (Doc # 239) at 8–9. But the statute of limitations has been tolled since the beginning of this litigation under *Sidney,* Accordingly, only claims accruing before October 13, 1995, might be barred.

 Kuimelis agrees that the discovery rule does not apply to section 17200 claims but contends that counterdefendants fraudulently concealed the claim. Under the fraudulent concealment doctrine, a "defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it." *Bernson,* 7 Cal.4th at 931, 30 Cal.Rptr.2d 440, 873 P.2d 613 (internal quotation omitted).

 Kuimelis alleges primarily that he believed that the service fee split was supported by "legitimate business reasons." FACC (Doc # 229, Exh 1) at ¶ 63. Allegations of actions taken, or beliefs held by, Kuimelis do not suffice to plead fraudulent concealment because the statute of limitations is tolled only if counterdefendants took affirmative actions to disguise the existence of a cause of action.

Kuimelis points to two acts allegedly taken by counterdefendants, neither of which suffice to demonstrate fraudulent concealment. First, Kuimelis alleges that EBMC claimed the service fee split "was essential to a continued good working relationship." *Id.* This allegation is irrelevant because it does not describe an affirmative action taken by a counterdefendant to conceal the cause of action.

 Second, Kuimelis alleges that "Burger facilitated MBK's understanding by telling MBK of other entities, with whom EBMC was Co–General Partner, that were also splitting service fees and/or commissions for their insurance-related efforts." *Id.* To conceal a cause of action, a defendant must conceal the facts underlying the cause of action. A representation concerning the legality of a transaction, therefore, cannot fraudulently conceal a cause of action.

Accordingly, the court DISMISSES Kuimelis' section 17200 claims for events occurring before October 13, 1995, Because the court cannot conclude at this time that "the pleading could not possibly be cured by the allegation of other facts" this dismissal is without prejudice. See *Lopez,* 203 F.3d at 1127.

### VIII

Counterdefendants initially moved to dismiss the eighth cause of action on statute of limitations grounds but later with-

drew this motion in their reply. See Counterdefendants Reply (Doc # 279) at 11. Accordingly, the court TERMINATES this motion.

### IX

Counterdefendants move to dismiss the ninth cause of action, which alleges a cause of action for declaratory relief. See FACC (Doc # 229, Exh 1) at ¶¶ 139–45. Kuimelis seeks a judicial declaration that moneys paid to the Friandes Group were disbursements of service fees, not a loan to EBMC. Alternatively, Kuimelis seeks a judicial declaration of the terms of any such loan. Further, Kuimelis seeks a determination of the liability of Kuimelis and counterdefendants to the projects and a determination that any judgment against Kuimelis should be shifted to counterdefendants.

Counterdefendants claim that ninth cause of action should be dismissed because Kuimelis has failed to comply with Cal Code Civ Pro § 1021.6. Section 1021.6 governs claims for attorney fees on successful claims for implied indemnity. But Kuimelis does not appear to be seeking to recover attorney fees in the ninth cause of action. Instead, he claims that the "burden of a *judgment*, if any," should be shifted from Kuimelis to counterdefendants "if MBK is compelled to pay *damages* which ought to have been paid" by counterdefendants. FACC (Doc # 229, Exh 1) at ¶ 145 (emphasis added). Accordingly, section 1021.6 does not seem applicable to Kuimelis' current claims.

To the extent that Kuimelis does attempt to recover attorney fees from this litigation under an implied indemnity theory, section 1021.6 would apply. Section 1021.6 governs claims for attorney fees arising from claims of "implied indemnity." Cal Code Civ Pro § 1021.6. Although Kuimelis seeks to recover for a claim of "equitable indemnity," equitable indemnity is merely another term for implied indemni-

ty. See *Bay Development, Ltd.*, 50 Cal.3d at 1030, 269 Cal.Rptr. 720, 791 P.2d 290 & n10.

Accordingly, counterdefendants motion to dismiss the ninth cause of action is DENIED.

### X

Counterdefendants move the court to dismiss the tenth cause of action, which seeks recovery under an implied contractual indemnity theory.

■ Counterdefendants first argue that the claim should be dismissed because it has not yet accrued. Kuimelis counters that an indemnity claim may be brought as a declaratory action in conjunction with the principal action. See *Allen v. Southland Plumbing, Inc.*, 201 Cal.App.3d 60, 65, 246 Cal.Rptr. 860 (1988). Although true, Kuimelis has not framed the implied contractual indemnity claim as one for declaratory relief. Accordingly, the court GRANTS counterdefendants' motion but allows Kuimelis leave to amend this claim as one for declaratory relief.

■ Counterdefendants also argue that the tenth cause of action should be dismissed with prejudice because a claim for implied contractual indemnity cannot be based on a breach of the implied covenant of good faith and fair dealing. Counterdefendants Mot (Doc # 239) at 14–16. Counterdefendants contend that "[i]t defies logic * * * that an obligation implied under the law may be grafted onto yet another obligation implied under the law." Counterdefendants Reply (Doc # 279) at 12. The court disagrees.

Implied contractual indemnity is "based on the concept that one who enters a contact agrees to perform the work carefully" and should be held liable for damages resulting from a breach. *Smoketree–Lake Murray, Ltd. v. Mills Concrete Constr.*

*Co.,* 234 Cal.App.3d 1724, 1736, 286 Cal. Rptr. 435 (1991). A breach of the implied covenant of good faith and fair dealing is no less a breach of contract than the breach of an express contractual term. Furthermore, "[t]he essence of the implied covenant is that neither party to a contract will do anything to injure the right of the other to receive the benefits of the contract." *Cates Construction, Inc. v. Talbot Partners,* 21 Cal.4th 28, 43, 86 Cal.Rptr.2d 855, 980 P.2d 407 (1999). Thus, the obligation imposed by the implied covenant closely echoes the concept underlying implied contractual indemnity.

Accordingly, the court DISMISSES without prejudice the tenth cause of action.

### XI

Counterdefendants move to dismiss the eleventh cause of action, Kuimelis' claim for money had and received. The FACC alleges that in 1998, Kuimelis learned that he had overcharged counterdefendants. FACC (Doc # 229, Exh 1) at ¶¶ 153–55. Kuimelis "forthwith refunded an amount equal to Counter–Claimants' initial calculations of those overcharges." Id. Later, Kuimelis discovered that he had over-refunded in an amount in excess of $60,000. Accordingly, Kuimelis seeks to recover the over-refunded money from counterdefendants. See *Schultz v. Harney,* 27 Cal. App.4th 1611, 1623, 33 Cal.Rptr.2d 276 (1994).

■■■ Kuimelis concedes in his opposition that only some of the money claimed in the ninth cause of action was sent to counterdefendants. Counterclaimants Opp (Doc # 256) at 24, Counterdefendants argue in the reply that Kuimelis' concession demonstrates that the eleventh cause of action should be dismissed as a fraud and sham pleading. Counterdefendants Reply (Doc # 279) at 13. This contention is entirely without merit. Kuimelis' allegation that counterdefendants are indebted to

Kuimelis for an amount of money, even if that amount of money is less than he initially pled, does not suffice to dismiss the cause of action either under FRCP 12(b)(6) or under the false and sham pleading doctrine. Furthermore, this claim has not been mooted because Kuimelis continues to aver that at least some money was obtained by counterdefendants that should be refunded to Kuimelis.

Accordingly, counterdefendants' motion to dismiss the eleventh cause of action is DENIED.

### XII

Counterdefendants initially moved to dismiss the twelfth cause of action on statute of limitations grounds but later withdrew this motion in their reply. See Counterdefendants Reply (Doc # 279) at 11. Accordingly, the court TERMINATES this motion.

### XIII

In sum, the court DENIES counterdefendants' motion to dismiss the FACC as a fraud and sham pleading (Doc # 244). The court GRANTS in part and DENIES in part counterdefendants' motion to dismiss the first through third and fifth causes of action (Doc # 238). The court GRANTS in part and DENIES in part counterdefendants' motion to dismiss the fourth and sixth through twelfth causes of action (Doc # 239).

Specifically, the court DISMISSES without prejudice the first through third causes of action. The court DENIES counterdefendants' motion to dismiss the fourth through sixth causes of action. The court DISMISSES without prejudice claims for damages arising prior to October 13, 1995, in the seventh cause of action and otherwise DENIES counterdefendants' motion against this cause of action. The court TERMINATES counterdefen-

dants' motion to dismiss the eighth cause of action. The court DENIES counterdefendants' motion to dismiss the ninth cause of action. The court DISMISSES without prejudice the tenth cause of action. The court DENIES counterdefendants' motion to dismiss the eleventh cause of action. Finally, the court TERMINATES counterdefendants' motion to dismiss the twelfth cause of action.

Kuimelis may file an amended counterclaim consistent with this order not later than July 15, 2004.

Further, the court notes that it has received yet another round of discovery dispute letters from counsel. In reverse chronological order, these letters are dated June 15, June 11, June 7, May 24, May 21, May 13, May 12, May 7 and May 4, 2004. These letters are in addition to the previous batch of discovery dispute letters the court received on or before the last hearing date in this matter, which included letters dated April 29, April 27, April 23, April 6 and March 30, 2004. Additionally, a motion to disqualify Daniel Beck and the Beck Law Offices from representing plaintiffs in this matter had been noticed for July 15, 2004, but was renoticed by the court clerk to August 26, 2004.

The court hereby STAYS all present proceedings in the above-captioned action and VACATES the July 15, 2004, motions hearing date. The court DIRECTS the parties to attend a case management conference on July 20, 2004, at 9:00 am.

IT IS SO ORDERED.